COUNTY OF DANE VS. SMITH.

The courts of record of this state having criminal jurisdiction, have the power, and it is their duty, to appoint counsel to defend persons charged with crime, who are so poor as to be unable to employ counsel.

The county in which a criminal action or proceeding arises, is liable to pay for the services of counsel appointed by the court to defend such persons, notwithstanding chap. 35 of the laws of 1860, which declared that a county should not be held liable to pay for such services.

The legislature cannot leave with the courts the authority to order counsel to defend such persons, and at the same time require that the services of counsel shall be rendered in such cases without compensation.

ERROR to the Circuit Court for *Dane* County.

This case came to the circuit court for Dane county on appeal from the board of supervisors of that county. The case was tried by the court on an agreed statement of facts; and the court found as facts, that *Smith*, the plaintiff below, was an attorney of said circuit court, and was duly appointed thereby to defend one Cahoon, charged with larceny; that said Cahoon was, at the time of his trial, too poor to employ counsel; that *Smith* rendered services in accordance with such appointment, which were reasonably worth twenty-five dollars; and that his account therefor was duly presented to the board of supervisors, and by them disallowed; and as a conclusion of law, the court found that the county of *Dane* was liable to pay said *Smith* the sum of twenty-five dollars. Judgment accordingly.

*H. M. Lewis*, District Attorney, for plaintiff in error, contended that attorneys are sworn officers of the court, and as such, under its control; that they are officers known to the common law, and recognized and controlled by statute (R. S., p. 664); and that the government has a right to call upon its officers, and even upon private citizens, to perform gratuitous services. Thus it may compel the attendance of witnesses without any pay. In New York, witnesses for the prosecution receive no pay. 2. All prosecutions are in the name and in behalf of the *state;* and it would seem that, naturally, if there is any liability for the costs of the same, it is on the part of the state. The legislative power, which fixes the liability upon the counties in certain cases

may exempt the counties from a portion or all of the liability. The legislature has declared that the counties shall not be liable in cases like this. If the attorney, in such a case, is entitled to compensation, the state, having exempted the counties, is itself liable, and the claim should be presented to the legislature. Statutes of 1860, p. 35. In Illinois the counties have been held not to be liable. 19 Ill., 78 ; 3 Gilman, 82.

*Rollins & Smith*, for defendant in error. [No argument on file.]

April 10.      *By the Court*, DIXON, C. J. The facts in this case are, in effect, the same as those in the case of *Carpenter & Sprague vs. Dane County*, 9 Wis., 274; and that decision would be conclusive upon them, were it not that they occurred since the enactment of chap. 35 of the Laws of 1860, which is supposed to have put an end to the liability of the counties in such cases. The appointment was made, and the services rendered by the defendant in error, at the April term, 1860, of the Dane circuit court. The supervisors disallowed the claim ; and, upon appeal, the circuit court, the facts being stipulated, reversed their decision, and directed judgment to be entered for the defendant in error. Upon this judgment and the exceptions taken, this writ of error is brought.

The case of *Carpenter & Sprague* was put upon the ground that the courts of record of this state, having criminal jurisdiction, possess competent legal authority to appoint counsel to defend paupers and other indigent persons charged with crime, and to bind the county by such appointment. This power and the duty, in proper cases, of exercising it, are expressly affirmed. It was placed on the basis of the common law, and constituted the foundation of the judgment there pronounced. The conclusion that the courts possessed such power was supported by arguments drawn from a variety of sources. The benign provisions of the constitution, by which criminal trials are in other respects governed ; the right of the accused to the assistance of counsel; the just and humane results arising from the exercise of this power ; the interest of the public in the correct and fair administration of

the criminal laws; and the well known and constant practice
of the courts from the first organization of the government,
were adverted to and considered—all for the purpose of es-
tablishing that proposition, and showing that such was the
law.   With the correctness of that conclusion we are still
well satisfied.   The power results from the necessities of the
case.   Public justice and sound policy demand it.   It may
be said that the rights of the prisoner, who is so poor as to
be unable to secure the services of counsel, may safely be
entrusted to the care and protection of the court and the
public prosecutor.   But a slight experience in judicial af-
fairs will demonstrate the fallacy of that position, and show
that, however vigilant the court might be, or however up-
right and conscientious the prosecutor, it would, as a general
practice, be most unsafe and hazardous.   The antagonism
and conflict of opposing and experienced minds, each anxi-
ous and active to detect and expose the defects and weak-
nesses in the cause of the other, are, in general, absolutely
essential to the discovery and establishment of legal truth;
and more particularly is this true of the investigation of ex-
tensive and complicated questions of fact, such as are often
presented in the prosecution of public offenders.   And, how-
ever criminal trials may have been heretofore, or are now,
conducted elsewhere, this kind of *ex parte* trial would, at
this time and in this country, be generally considered ex-
tremely partial and discreditable.   It is certainly better that
the public purse should be opened, and the people taxed to
pay for them, than that defenses in such cases should be dis-
pensed with, or that they should be made entirely at the ex-
pense of single individuals.

But, to return to the legal question now before us; hav-
ing established that the courts had the power to make the
appointment and order the services, it followed as a neces-
sary legal consequence, that the person appointed and who
rendered them was entitled to a just compensation.   This
was of course to come from the county, that being the muni-
cipality to which, under our system, all such expenses are
chargeable.   The liability of the county, therefore, results
from the existence and exercise of the power; not perhaps

January Term,
1861.

COUNTY OF
DANE
v.
SMITH.

because the court is authorized to contract for the county or its officers; for strictly speaking, it has no such power; but because the law, which gave the power to order, implied the promise to pay. This is agreeable to the general doctrine, that whoever knowingly receives or assents to the services of another, which are of value and contribute to his benefit, impliedly undertakes to pay such sum as the services are reasonably worth. It has even a stronger foundation—that of an employment previously authorized.

This being the state of the law at the time of the passage of the statute above referred to, we will next consider what was its effect. It is in these words: "Where, in a criminal action or proceeding, any attorney or counsellor shall defend the person charged with any offense, by order of the court or otherwise, the county in which such action or proceedings arose shall not be held liable to pay the attorney or counsellor for services in making such defense." If, before its enactment, there was any doubt about the power of the courts to order attorneys and counsellors to defend persons charged with the commission of offenses, there certainly can be none now. The legislature have not only not removed it, but they have expressly recognized its existence and validity. They have in effect said that the courts have and may exercise it, but that the attorney or counsellor, who, in obedience to it, makes the defense, must, as a penalty for complying with the lawful command of the court, do so without compensation. Can the legislature do this? Can they command the time and services of the citizen, not officially, but professionally, not in a matter which concerns the taxing power, the general enforcement of the laws, or the public defenses, but in one which relates exclusively to his private trade or calling, and then say that he shall receive no pay for them? We are of opinion that they cannot. We think that there is a limit to legislative authority in these particulars, and that that limit will be found in the legitimate accomplishment of some one of the general purposes above indicated. We do not believe that the legislature have the power generally to say to the physician, the surgeon, the lawyer, the farmer, or any one else, that he shall render this

or that service, or perform this or that act in the line of his profession or business, without remuneration. If they could do so in one instance, they could command his whole time and services in the same manner, a stretch of power for which, we believe, no one will contend.

Nor do we think that the legislature can leave with the courts the authority to order and employ, and at the same time destroy the implied promise to pay. The latter arises immediately out of the former, and is, in the law, so inseparably connected with it, that where the former exists, the latter exists also. Unless the services are rendered gratuitously, which, under such circumstances, cannot be presumed, the promise of payment follows as of course. The statute, therefore, is so inconsistent with itself, that no effect can be given to it. It is for that reason void.

We do not, however, desire to be understood as saying that it is not in the power of the legislature to withdraw or repeal the authority of the courts, and to say that indigent persons accused of crime shall go undefended. We leave that for future discussion. But we do wish to have it understood that when the present salutary and beneficent rule is changed or abrogated, the responsibility will rest with the legislature, and not with us.

The judgment of the circuit court is affirmed, with costs.