## State *vs.* William V. Hudson.

MAY 16, 1935.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker, and Condon, JJ.

CAPOTOSTO, J. This case comes before us on the defendant's exception to the denial by the superior court of his motion for funds to prosecute a bill of exceptions.

The defendant, an indigent prisoner, represented by counsel appointed by the court, was convicted by a jury

of breaking and entering in the night time and larceny. A motion for a new trial was denied. The defendant then moved that the court grant him funds to prosecute a bill of exceptions. This motion was denied by the trial justice on the grounds that the superior court has no power to make such an order and that, assuming that such power did exist in the discretion of the court, it found no reason to grant the motion in this particular case.

The issue presented to us is whether or not, after trial in the superior court, an indigent defendant in a criminal case is entitled to funds from the state with which to prosecute a bill of exceptions and to pay counsel fees. The answer to this inquiry rests in the construction of sections 69 and 70 of chapter 407, G. L. 1923, which, being expressed by means of exceptions and provisos, make it necessary to quote the sections in full. "Section 69. The superior court may appoint, whenever occasion may require, one or more attorneys to conduct the defence of any indigent person charged with any offense against the laws of the state. Sec. 70. The attorney or attorneys so appointed shall receive for the services rendered in conducting the defence of such indigent person a reasonable compensation, to be allowed by the court: Provided, that, except in the defence of indigent persons charged with a capital offense, such compensation shall not exceed fifteen dollars per day for every day necessarily employed in conducting such defence, or in case no trial shall be had such attorney or attorneys, shall receive not exceeding ten dollars for the services rendered in such cause, and shall also receive the necessary disbursements made therein, to be allowed by the court, which sums shall be paid out of any moneys in the treasury not otherwise appropriated; and provided, further, that in all cases except in the trials of any indigent person indicted for murder, the attorney or attorneys so appointed shall not receive pay for more than two days in the trial of any one case."

Article I, section 10 of our Constitution guarantees a trial by jury to every person charged with a criminal offense, and then proceeds to enumerate certain rights which shall be secured to the accused at the trial, including the compulsory attendance of witnesses and the assistance of counsel in his defence. There is no constitutional provision which expressly guarantees the defendant a review by appellate proceedings of his trial before a jury.

Irrespective of statute, it is generally held that a trial court has inherent power to appoint an attorney for an indigent prisoner in his defence before a jury. In the absence of statutory authority, however, a sharp conflict of opinion exists as to the power of the court to compensate the attorney for such services out of public funds. Some jurisdictions say that this is a contribution by officers of the court to the cause of justice and so deny any compensation; others take the position, as in *Webb* v. *Baird*, 6 Ind. 13, that: "Honorary duties are hardly susceptible of enforcement in a court of law," and allow a reasonable fee. *Rowe* v. *Yuba County*, 17 Cal. 61; *Samuels* v. *County of Dubuque*, 13 Ia. 536; *County of Dane* v. *Smith*, 13 Wis. 585; *Conant* v. *Burnham*, 133 Mass. 503.

This conflict clearly indicates the object which the statute before us sought to accomplish when first enacted by Public Laws 1891, (Jan. Session), Chapter 921. Its purpose was to affirm the generally conceded right in the court to provide counsel for an indigent accused, to authorize the use of public funds for this purpose, and to limit the compensation and disbursements allowable in such cases.

The statute as first enacted in 1891 is clear and direct. In order to better understand the quotation in full of the original enactment which follows, we deem it advisable to state that our judicial system in 1891 comprised a supreme court and a court of common pleas, which were to a considerable extent interdependent. The court of common pleas, or trial court for both civil and criminal matters, was presided over by one or more justices of the supreme

court, specially designated for such service. The supreme court, except in Providence county, had concurrent original jurisdiction with the court of common pleas in the trial and disposition of all crimes and offenses until the passage of the Judiciary Act of 1893, when this original jurisdiction in criminal matters was confined to the common pleas division of the supreme court. Pub. Stat. 1882; Judiciary Act, 1893.

Said chapter 921, P. L. 1891, relating to the appointment of counsel for an indigent prisoner, is as follows: "Section 1. Any two justices of the supreme court, at any regular or adjourned term of the supreme court or court of common pleas, may appoint one or more attorneys to defend any indigent person on trial before such court for any offense against the laws of the state.

"Sec. 2. The attorney or attorneys so appointed shall receive for the services rendered in conducting such defense a reasonable compensation, to be allowed by the justice or justices presiding at the term of court at which such services were rendered, not exceeding fifteen dollars per day for every day necessarily employed in conducting such defense, or in case no trial shall be had, such attorney or attorneys shall receive not exceeding ten dollars for the service rendered in such cause, and shall also receive the necessary disbursements made therein, to be allowed by such presiding justice or justices, which said sums shall be paid out of any money in the treasury not otherwise appropriated; *Provided,* the attorney or attorneys so appointed shall not receive pay for more than two days in the trial of any one case."

A reading of these two sections, which reappear in somewhat changed form, as sections 66 and 67, chapter 285, G. L. 1896, shows that in the case of an indigent prisoner the appointment of counsel by the common pleas division, his compensation and disbursements are restricted to the defence while "on trial before such court." Furthermore, the compensation therein provided applies to all kinds of cases. Under its provisions, an attorney appointed to

defend an indigent prisoner charged with the most heinous crime could expect no more than one who represented a defendant in a minor infraction of the criminal law. Experience undoubtedly proved this to be inadvisable if not unfair.

In 1905, the court system and certain matters of procedure were changed by the Court and Practice Act. The superior court was substituted for the common pleas division of the supreme court, formerly the court of common pleas, for the trial of all matters, both civil and criminal, with judges and jurisdictions distinctly its own. Thereafter, the supreme court became a court of appeal with limited original jurisdiction. In this act of 1905, we find for the first time the statute under consideration in its present form. Comparing the original statute of 1891 with the language used in its reenactment of 1905, it is clear that the legislature at least intended to allow the court wider discretion in the matter of disbursements and in compensating counsel assigned to an indigent accused in murder and other capital offenses.

Our attention is attracted to the difference in the language concerning the scope of the appointment that the court is authorized to make. The 1891 statute provides for the appointment of counsel "to defend any indigent person on trial before such court," while the revision of 1905 empowers the court to appoint counsel "to conduct the defence of any indigent person."

It is reasonable to urge that the present statute should be interpreted in the light of its predecessor of 1891 and held to mean that the legislature intended to limit the court's authority to compensate an attorney for an indigent prisoner, to the services and disbursements incidental to the proceedings in the trial court and no more. Such a construction would do no violence to the ordinary meaning of the word "trial."

In *United States* v. *Curtis*, 4 Mason's Rep. 232, at page 237, STORY, J., says: "In short, so far as authorities, or

reasoning, or forms go, there can be no legal doubt, that by the term '*trial*,' is generally intended, in the law, the actual trial of the prisoner by the jury. The constitution of the United States, too, in the sixth amendment, which provides, that the accused shall enjoy the right to a speedy and public trial by jury, manifestly uses the term in the same sense; and indeed it pervades the general structure of our laws."

We hesitate to accept this narrow construction of the present statute in view of its humanitarian. purpose and the changed wording adopted in 1905, although, at the very outset, we admonish those who are charged with its application that the statute, as we construe it, should be applied with the utmost reserve and circumspection, lest a medium for the protection of worthy unfortunates be turned into an agency for unjustified litigation to the delay of justice at increased public expense.

When the legislature discarded the restricted meaning of the words "to defend any indigent person on trial before such court" for the more comprehensive phrase "to conduct the defence of any indigent person," it must have intended reasonably to provide for something different from that expressed in the existing law. To defend a person on trial before a court is, in our opinion, not equivalent to the provision to conduct the defence of such a person. While the first is necessarily included in the latter, the defence of a person conceivably may require proceedings beyond the presentation of his case to the trial court. Serious questions of law may be in issue, which, especially in capital cases, may be of vital importance not only to the individual but also in the impartial and equal administration of justice.

It is a fundamental rule in the construction of a statute that the legislative intent is to be ascertained by considering the purpose for which it was passed and the language used, together with an examination of the whole and every part of the enactment, each with reference to the other. *Dawley* v. *Probate Court*, 16 R. I. 694; *In re State*

*House Commission,* 19 R. I. 326; *State* v. *Drowne,* 20 R. I. 302; *Racine* v. *Tenth District Court,* 39 R. I. 475; *Morgan* v. *Allen,* 51 R. I. 228. The word "trial" in the present statute, when considered in connection with the term "conduct the defence," warrants a more comprehensive meaning than is generally attributed to it, if we are to give significance to the language of the amendatory act. In *Hirschfelder* v. *The State,* 19 Ala. 534, the court says: "By the terms, 'on the *trial* of any person,' &c., we must understand the *prosecution* of any person, the word 'trial' being used in its comprehensive sense, as embracing all the proceedings down to the acquittal or conviction of the party." A similar conclusion was reached in the case of *Osborn* v. *State,* 24 Ark. 629, where the court held that the phrase, "during the trial" means every substantive step taken by the court in the cause, after the indictment is presented by the grand jury to the court, up to and including the final judgment. It is apparent that the court does not consider each step taken in the cause as a separate and distinct trial, but only as a part of the prosecution, which, together with the final adjudication of the case upon its merits, constitutes the trial contemplated by statute. In *People* v. *Looney,* 314 Ill. 150, the court expresses itself in the following language: "Since the act in regard to Attorneys General and State's attorneys expressly authorizes the Attorney General to advise the several State's Attorneys in matters relating to the duties of their office, and, when in his judgment the interest of the people of the State requires it, to attend the trial of any party accused of crime and assist in the prosecution, there is no basis for an objection by a defendant to the appearance of the Attorney General after the return of the indictment. The trial referred to is not merely the proceedings beginning with the empaneling of the jury and ending with the verdict, but includes all the preliminary and subsequent proceedings arising in the progress of the case." We are, therefore, of the opinion that the word "trial" in our statute is to be construed

broadly and held to include any proceeding in the course of a criminal prosecution from the return of the indictment to final acquittal or conviction.

At our request a search has been made of the records, from 1891 to the present time, in the superior court and the preceding jury trial courts, for the purpose of ascertaining the practice, if any, in appellate proceedings under this statute. This search disclosed only three cases in which the court made an allowance for a transcript or attorney's fees or both, each involving a charge of murder. In *State* v. *Trent*, (1910), after a transcript of the evidence was ordered "at the state's expense," the defendant withdrew his exceptions; in *State* v. *Deslovers*, (1918), the superior court allowed disbursements and fees for services in this court; and in *State* v. *Amaral*, (1924), the trial justice ordered that the cost of the transcript "be paid by the state." No order has been brought to our attention authorizing payment of any sort for services in connection with appellate proceedings prior to 1905. This has a two-fold significance: it strongly indicates, first, that before that date the statute was considered applicable only to services in the trial court; and second, that since that time, although it was deemed more liberal, yet both the bench and bar invoked its aid with scrupulous restraint and only in the most serious cases.

The decisions in other jurisdictions on the right of an indigent prisoner to a review of his case by a court of appeal are in conflict, and are to be read in the light of the courts' general attitude where no statute exists or of the local statutory limitations where a statute has been enacted. The tendency of these authorities, in most if not all instances, is to grant this relief to a limited extent and to restrict its application to cases of real doubt and importance, capital or otherwise. The question most frequently raised is the right of an indigent prisoner after conviction to secure a transcript of the evidence at the state's expense, rather than the compensation that the attorney shall receive for his

services in a court of review. In the comparatively few cases where this last question has been considered, nearly all the decisions hold that the attorney's fees shall be determined by the court that made the appointment, that the allowance must be confined strictly within the provisions of the statute, and that the court shall exercise its judgment and sound discretion only after a careful inquiry of the services claimed to have been rendered by the attorney.

In *State, ex rel. Mahoney* v. *Ronald*, 117 Wash. 641, 202 Pac. 241, the court, after calling attention to the fact that by common law there was no right of appeal in criminal cases, held that in the absence of any statute, a defendant is not entitled to a free transcript for the purpose of an appeal, although in the earlier case of *State* v. *Fenimore*, 2 Wash. 370, by mandamus, a transcript was ordered. The state of Oklahoma is more liberal in allowing transcripts, even though no statute is concerned. The case of *Noel* v. *State*, 17 Okla. Cr. 308, 188 Pac. 688, relies upon the decision in *Jeffries* v. *State*, 9 Okla. Cr. 573, 132 Pac. 823, in which the court summarizes a rather forceful expression of its views by saying: "We want the people of Oklahoma to understand . . . that no one can be deprived of his right of appeal simply because he is unable to pay a stenographer to extend the notes of the testimony." The earlier cases in Wisconsin held that the trial court had no power at common law to appoint an attorney to act for an indigent person in an appellate court, although on rare occasions the supreme court, on application, made such an appointment in the exercise of its own revisory power. *Carpenter & Sprague* v. *Dane County*, 9 Wis. 274; *County of Dane* v. *Smith*, 13 Wis. 585; *Weisbrod* v. *Board of Supervisors*, 20 Wis. 440; *Dickerson* v. *The State*, 48 Wis. 288. In construing a statute which was later enacted, the court, in *State* v. *Wentler*, 76 Wis. 89, decided that the appointment by the trial court of an attorney to defend a person charged with a criminal offense is sufficient authority for the attorney to represent the accused on appeal, but refused to fix an

allowance for such services, saying that, "it is the duty of the court in which the prosecution originated, on application to the court and notice thereof to the district attorney, and on due proof of the services rendered in this court, to certify to a reasonable compensation for such services." In Alabama, the code makes no provision for the appointment by the trial court of counsel in appellate proceedings, although there is a statute which requires that on an appeal from a conviction for a felony the clerk must make up a transcript of the record and transmit it to the clerk of the supreme court by a certain time. *Campbell* v. *State*, 182 Ala. 18.

Indiana, where there is a limited statute, holds that the appointment of an attorney to defend an indigent prisoner extends to appellate proceedings, but subjects his right of appeal to the sound discretion of the trial court, which is subject to review in the supreme court. *Gordon* v. *Board of Commissioners*, 52 Ind. 322; *Stout* v. *State*, 90 Ind. 1; *Morgan, Ex Parte*, 122 Ind. 428; *Hendryx* v. *State*, 130 Ind. 265. A similar view is taken by the Connecticut court, *State* v. *Klein*, 95 Conn. 451, wherein it says: "Orders of this nature are not made as of course, but upon a finding that the ordering and certification of the evidence were reasonably necessary to a proper determination of the questions upon the appeal. . . . An order of this nature is within the sound discretion of the trial court and reviewable."

The Iowa court construes the statute liberally and treats the defendant's request for a transcript of the evidence almost as a matter of right, especially when dealing with capital cases. In *State* v. *Robbins*, 106 Ia. 688, 77 N. W. 463, where the defendant was convicted of murder in the first degree, the court says: "The spirit of our law is not only to secure to the accused a full and fair trial in the lower court, but also a full review of his case on appeal to this court. In view of the severity of the punishment, (life imprisonment) the grounds assigned for a new trial,

the necessity for a transcript of the evidence, the inability of the defendant to pay therefor, and his right to a review of the case on appeal in this court, we conclude that the exercise of a sound discretion required that the order for a transcript at the expense of the county should have been made." *State* v. *Wright*, 111 Ia. 621; *State* v. *Gray*, 87 N. W. (Iowa) 416, *State* v. *Goodsell*, 136 Ia. 445; *State* v. *Shaffer*, 137 Ia. 93.

The practice in Michigan is fully stated in the case of *DeLong* v. *Board of Supervisors*, 111 Mich. 568, where, in the course of construing the statute, the court says: "It seems impossible of belief that the legislature intended that any attorney defending an indigent prisoner under the order of the circuit court should, upon his own motion, subject the county to the expense of an appeal to this court. It is a consistent view to take that the legislature did intend to provide for the employment and payment of an attorney to follow the case to this court if, in the opinion of the circuit court, the case should be appealed. Upon conviction the presumption of guilt prevails. There may be cases involving questions which should be determined by the court of last resort, and in such cases it would be very proper for the circuit court to make an order authorizing the prisoner's counsel to appeal the case, and he would then be entitled to compensation under section 9047. If he chooses to appeal the case upon his own motion, he must look to his client for compensation."

We have reviewed these authorities to show that the preservation of the constitutional rights of an indigent prisoner through appellate proceedings is the primary object that the courts seek to attain, with or without the aid of statutes. The question of counsel fees rarely appears in the reported cases, and in all instances that have come to our attention the sum to be allowed for services before a court of appeal has been left to the sound discretion of the court that made the appointment. We believe that this attitude of the courts is both wise and salutary. Con-

ceding that an attorney who is appointed to represent an indigent prisoner is under the duty, unless relieved of his obligations by the court, to defend the accused at every stage of the proceedings up to a final determination of the case, yet he stands in a different position to the court and to the public from an attorney who has been retained by or in behalf of an accused and is to be paid from private funds. In carrying out his assignment under a court appointment, and inasmuch as he is to be compensated out of public funds, an attorney for an indigent prisoner stands in the position of a *quasi* public officer, charged with the dual responsibility of a faithful discharge of his duties both to the individual and to the state. He must exercise his best efforts and professional ability in behalf of the person assigned to his care, but he is not at liberty either to indulge that person's wishes or to pervert a law intended for the protection of unfortunates to his own personal advantage. His obligation to the court, his sense of professional ethics and his recognition of the confidence reposed in him by the public through the court will deter any reputable attorney from invoking the aid of the statute except in the most serious of cases, and then only after mature consideration of the rights involved.

Our statute permits the superior court to appoint counsel to defend an indigent person charged with a criminal offense, to insure that every citizen, no matter how humble, shall enjoy the right to a full, fair and impartial trial. The defence of a person charged with crime includes every step in the proceedings from the time of arraignment until his acquittal or conviction in accordance with the law. He is on "trial," if we construe that word in its more comprehensive sense, as we prefer to do in this instance, until the very end of the case.

The right to prosecute a bill of exceptions is in the nature of a statutory privilege    *Hartley* v. *Rhode Island Co.*, 28 R. I. 157; *State* v. *Farr*, 29 R. I. 72; *Batchelor* v. *Batchelor*, 39 R. I. 110. Section 9 of chapter 348, G. L. 1923, permits

an accused to take exceptions during a trial, and section 17 of the same chapter allows him to prosecute a bill of exceptions. We do not believe that in serious criminal cases the exercise of this right should be controlled by the financial circumstances of the accused. The legislature did not intend and the court would not countenance any such discrimination.

The statute under consideration is broad enough to include the right to a review of the trial of an indigent defendant by appellate proceedings at the state's expense. This right, however, is a qualified right in the nature of a privilege; it is to be exercised with great circumspection and only for serious cause. The power to appoint an attorney for an indigent prisoner, to fix counsel fees and to allow disbursements is vested and remains at all times in the superior court. That court has discretionary power over the institution of appellate proceedings at the expense of the state, and also over the allowance of counsel fees and disbursements after the appellate proceedings have ended. In either instance, the exercise of such discretion will not be reviewed by this court, except in a clear case of abuse. It is the duty of the superior court when acting under this statute to exercise its sound judgment at all times and see to it that both the individual and the state are impartially protected.

We have confidence that our liberality in construing this statute will confirm the practice that has heretofore prevailed, and that in the future it will be invoked with the same restraint as in the past.

We find that the defendant was not entitled as a matter of right either to a transcript or counsel fees for services in appellate proceedings. This was within the sound discretion of the court to grant or deny. A review of the record fails to show any abuse of discretion by the trial court in refusing the defendant's motion for funds to prosecute a bill of exceptions.

The defendant's exception is overruled, and the case is remitted to the superior court.

*John P. Hartigan, Attorney General, Michael De Ciantis, Asst. Attorney General,* for State.

*Thomas J. Paolino, Raphael Vicario, Daniel Lapolla,* for defendant.