## Commonwealth v. Becker

*John W. Conrad* and *Clarence O. Morris,* for petitioner.
*Raymond E. Brown,* county solicitor, contra.

LONG, P. J., January 18, 1937.—On November 4, 1936, John Becker was found guilty of murder of the first degree and the jury fixed death as the penalty. On December 31, 1936, a new trial was refused and January 4, 1937, was fixed as the time for sentence. At the moment sentence was to be passed defendant requested a new trial, alleging after-discovered evidence. Testimony having been taken on January 5, 1937, a new trial was refused and defendant was sentenced in the manner fixed by the verdict.

He chose at the inception of his trial two experienced criminal lawyers, John W. Conrad, Esq., and Clarence O. Morris, Esq., the latter ex-District Attorney of Armstrong County, with many years' experience in the trial of homicide cases. Defendant has filed an appeal to the Supreme Court, and his counsel have petitioned this court for their appointment as counsel, nunc pro tunc, and for an allowance to cover the expenses of his appeal, setting forth in substance that defendant is destitute; that the expenses of his trial and employment of counsel were paid by defendant's uncle, who, too, is now financially unable to pay; that the cost of such appeal, exclusive of counsel fees, for which no claim is being made, will aggregate $772; that counsel are of the opinion that an appeal is essential to protect the rights of defendant.

Notice having been served on the county solicitor, the county commissioners and the district attorney, the county commissioners filed answer denying the right of the court to make such order because the Act of March 22, 1907, P. L. 31, was not complied with at the inception of the trial and because counsel have not filed the required affidavit setting forth that they have not received any com-

pensation for services, etc.; that contributions made by others have not been shown; that relatives have refused further contributions because they are satisfied of defendant's guilt; that the sum of $350 was used to pay fees and expenses incident to the trial; that it is not shown that additional funds cannot be raised, and that a review of the proceedings would avail nothing, for the reason that defendant confessed his guilt upon several occasions before the trial and during his trial acknowledged his guilt and was willing to plead guilty.

The matter having come on for hearing, defendant established that it will cost approximately $772 to finance the appeal to the Supreme Court; that counsel were paid by John Becker, Sr., and other relatives of defendant sums aggregating $470, which sums were not designated as counsel fees or expenses; that defendant's uncle, John Becker, has promised to pay more from his salary of $21 per week; that defendant is and has been destitute; that his uncle and aunts have mortgaged their home for $350, which sum was heretofore paid to counsel; that defendan't mother owns a house and lot, without encumbrance thereon, assessed at $1,500; that defendant, during the trial and before he testified in his own behalf, admitted to his uncle, John Becker, that he killed the deceased and was willing to plead guilty, and that defendant on the same day admitted to his two counsel that he did the killing and was willing to plead guilty, and this information was given to the court; that the court gave defendant from Saturday noon until Monday morning to think it over, anticipating an occurrence such as has now transpired, that in the meantime defendant informed his uncle and counsel that he was not guilty and would continue with the trial.

On cross-examination by the learned county solicitor, counsel for defendant were not in position to state the question or questions involved in their appeal to the Supreme Court. However, ex-District Attorney Morris, of

counsel for the defendant, testified, in answer to a question propounded by the court:

"Q. Assuming that you take an appeal to the Supreme Court, and assuming you are able to reverse this case, then do you maintain you could procure a more favorable verdict in another trial?

"A. As I heretofore informed the court privately, there would be a possibility of a life sentence, which would certainly be a more favorable verdict than death, even if the jury went to the extent of deeming him guilty."

This question was asked because counsel for defendant tried the case from its inception to the present time on the theory that the deceased had been murdered and that every ingredient of murder of the first degree, with the death penalty fixed, existed. Of course, his counsel say defendant did not do it. The learned county solicitor argues that from the facts, the Commonwealth's testimony, at least four confessions made by defendant prior to the trial, and four confessions made by him during the trial prior to the time he testified in his own behalf, there is no equity with him and that the law does not contemplate the appointment of counsel, nunc pro tunc, under such facts for the purpose of obtaining funds for an appeal at the expense of the public. Defendant's counsel argue that an appeal is essential to protect the rights of defendant. Is it the duty of counsel under the facts presented, in the event the County of Jefferson is compelled to pay the expenses of such appeal, to pursue their appeal? Everybody—defendant, his counsel, the Commonwealth, the county solicitor in behalf of Jefferson County, and the court—now has the facts. We refer to the remarks of the Supreme Court of Rhode Island in State of Rhode Island v. Hudson, 100 A. L. R. 313, 320, 179 Atl. 130, while considering a statute and the motion of a defendant requesting the court to grant him funds to pursue a bill of exceptions, where the court well said:

"In carrying out his assignment under a court appointment, and inasmuch as he is to be compensated out of pub-

lic funds, an attorney for an indigent prisoner stands in the position of a quasi public officer, charged with the dual responsibility of a faithful discharge of his duties both to the individual and to the state. He must exercise his best efforts and professional ability in behalf of the person assigned to his care, but he is not at liberty either to indulge that person's wishes or to pervert a law intended for the protection of unfortunates to his own personal advantage. His obligation to the court, his sense of professional ethics, and his recognition of the confidence reposed in him by the public through the court will deter any reputable attorney from invoking the aid of the statute except in the most serious of cases, and then only after mature consideration of the rights involved.

"Our statute permits the superior court to appoint counsel to defend an indigent person charged with a criminal offense, to insure that every citizen, no matter how humble, shall enjoy the right to a full, fair and impartial trial."

See Commonwealth v. Wormsley, 294 Pa. 495.

Defendant having confessed his guilt to a number of persons prior to his trial, and to his counsel and others during the trial, and the jury having found him guilty, undoubtedly his guilt now prevails. Where is there any equity in his favor authorizing the court to grant this request?

We will now look at the law. The County of Jefferson strenuously contends that this court has no lawful right to make an order for the payment of the appellant's expenses. Defendant and his counsel chose to resort to private funds for the conduct of his trial. They now seek to come in under the provisions of the Act of March 22, 1907, P. L. 31, authorizing the appointment of counsel. Assistance under this act is subject to a condition precedent:

"Provided, That in order to be entitled to such expenses and compensation, counsel so assigned must file with the

judge, sitting at the trial of the case, an affidavit that he has not, directly or indirectly, received, nor entered into a contract to receive, any compensation for such services from any source other than herein provided."

Counsel have failed to file such affidavit and have not come within the provisions of said act of assembly. The evidence shows that counsel received from private sources, whether for counsel fees or for expenses of the trial we do not know, sums aggregating $470, and have been promised more.

The County of Jefferson contends that the provisions contained in this statute are mandatory, and without the required affidavit having been filed the court is without jurisdiction and powerless to act. The court is of the opinion that this contention is well taken. See Commonwealth v. Wormsley, supra; Commonwealth v. Briscoe, 18 D. & C. 615.

Defendant maintains that the court has the authority after trial, at this late date, although he did not prior to the trial avail himself of the Act of 1907, to make such appointment and allowance of expenses, nunc pro tunc, and cites Commonwealth v. Kosh, 16 D. & C. 634. There, apparently, the County of Lackawanna filed no objection as was done here. Furthermore, there is nothing to indicate in that case that defendant's counsel failed to comply with the provisions of the Act of 1907. No doubt, there nothing was received by counsel, directly or indirectly, for services and expenses from any other source. Unfortunately for counsel, preceding and during the trial they resorted wholly to private funds and have chosen to appeal the case upon their own initiative; now they must look to their client for expenses. This court is satisfied that, if counsel continue to believe that an appeal is essential to protect the rights of defendant, because of the fact that his friends and relatives own real estate without encumbrance thereon any order we are compelled to make will not deter him in perfecting and pursuing such ap-

peal. We are, therefore, compelled to deny the motion, for the reason that this court has no power under the law and the evidence to make such order, and we accordingly make the following

*Order*

And now, January 18, 1937, after due and careful consideration, the petition is dismissed and the motion for allowance of expenses of appeal and the appointment of counsel, nunc pro tunc, is denied.