# TERRITORY OF HAWAII *v.* WALTER LEE HAYES, ALSO KNOWN AS WALTER HAYES BLANTON.

## No. 4013.

ARGUED APRIL 5, 1957.                    DECIDED APRIL 26, 1957.

RICE, C. J., STAINBACK AND MARUMOTO, JJ.

*Per Curiam.* Defendant is now imprisoned at the Oahu prison upon conviction of the offense of carnal abuse of a female under twelve years and has been so imprisoned since April 2, 1956. He addressed to the chief justice a petition entitled "Habeas Corpus Petition." The petition is inartistically drawn and was obviously prepared by defendant personally without assistance of counsel. The pertinent facts are not clearly set forth and are only vaguely referred to. But the complaint is clear. The complaint is that the trial judge refused to permit him to appeal his conviction to this court *in forma pauperis* and to provide him with counsel and transcript of the trial necessary for his appeal at the expense of the Territory. The chief justice, with the concurrence of the court, treated the petition not as coming within the provisions of the statute relating to habeas corpus proceedings but as com-

ing within section 9603 of the Revised Laws of Hawaii 1945, which provides that this court "shall have the general superintendence of all courts of inferior jurisdiction, to prevent and correct errors and abuses therein where no other remedy is expressly provided by law." Preliminary to consideration of the petition by this court, the chief justice referred it to the trial judge for certification of pertinent facts and reservation of questions of law raised by such facts.

In response to such reference the trial judge forwarded to this court a statement of facts agreed to by the Territory and defendant. The facts pertinent to the petition are as follows: Defendant was tried in the first circuit court before a jury, which returned a verdict of guilty. He was sentenced to imprisonment for a period not to exceed fifty years. At the trial and at the time of sentence he was represented by counsel of his choice. When the sentence was pronounced, his counsel gave oral notice of intention to sue out a writ of error. However, counsel did not follow up such oral notice with a formal application for writ of error but withdrew from the case, with the approval of the court, because defendant failed to pay in full the fees for services rendered at the trial. Prior to withdrawal, counsel informally inquired of the trial judge whether defendant was entitled under section 10685 of the Revised Laws of Hawaii 1945 to have counsel appointed by the court and to have the cost of the transcript and other costs paid from court funds for the purpose of appeal. The trial judge expressed the opinion that section 10685 would not apply where defendant was represented by counsel of his choice at the trial. After the withdrawal of counsel, defendant sent a friend to the supreme court to file on his behalf two documents, both prepared by him, entitled "notice of writ of error" and "bill of exceptions." The clerk of the supreme court refused to accept the documents for

filing on the ground that they were not in proper form and on the further ground that the required filing fee was not tendered therewith. He suggested that defendant write to the chief justice explaining his financial plight and inquiring about taking a pauper's oath in order to prosecute his appeal. Following such suggestion, defendant addressed a letter to the chief justice in which he made "a pauper's plea for aid in the pursuit of justice" and another letter to the clerk of the supreme court in which he enclosed documents purporting to be a bill of exceptions and an application for a writ of error with the request that if the documents were defective he be "advised of the amendments and procedure necessary to secure the desired action by the appropriate authority." When he did not receive any answer to the letters, he went to the office of the clerk of the trial judge to take a pauper's oath but was informed that he was not entitled to take such oath because he was represented by counsel of his choice at the trial. He then proceeded to the office of the clerk of the supreme court where he requested the clerk to file his appeal documents and to permit him to take a pauper's oath. The clerk went to the chambers of the chief justice to obtain instruction but the chief justice was absent. In the absence of the chief justice, the clerk informed defendant that he had no authority to grant him permission to take a pauper's oath, that the documents were not in proper form and that they could not be accepted without the prepayment of the filing fee.

Defendant took all of the foregoing steps before the expiration of the statutory period for the filing of an application for writ of error. Upon such facts, the trial judge reserved the following questions to this court:

1. Where a defendant indicted upon a felony charge is not indigent at the time of trial upon such charge, does not request the appointment of counsel for his defense by

the circuit court and employs counsel of his own choice to conduct his trial, but then becomes indigent after his conviction on such charge and is not able to obtain counsel for the prosecution of an appeal from such conviction and pay the necessary expense of the preparation of a transcript of the evidence and costs of appeal, do the provisions of section 10685 of the Revised Laws of Hawaii 1945, as amended, upon proper showing of the then indigent condition of such defendant, authorize the circuit court to appoint counsel for such defendant to prosecute an appeal from such conviction and to pay counsel so appointed and all expenses of preparing the necessary transcript of evidence and records for the consideration of the supreme court on appeal, exceptions or writ of error from the appropriation made for the general expenses of such court?

2. If question 1 be answered in the affirmative, would the fee of counsel so appointed to prosecute such appeal be governed, by analogy, by the provisions of section 10685, Revised Laws of Hawaii 1945, as amended, or rest in the discretion of the court?

3. If question 1 be answered in the affirmative, where a defendant after conviction on a felony charge has assets, funds, or available resources, but not sufficient assets, funds, or available resources to procure counsel for the prosecution of an appeal from such conviction and to pay for the expense of preparing the necessary transcript of evidence and expenses of appeal, do the provisions of said section 10685, upon proper showing of the then indigent condition of such defendant, authorize the circuit court to appoint counsel for such defendant to prosecute an appeal from such conviction and to pay counsel so appointed and all expenses of preparing the necessary transcript of evidence and records on appeal from appropriations made for the general expense of such court, without consideration of or requiring the defendant to pay a portion of such

expense from any assets, funds, or available resources such defendant may have?

4. With regard to the provisions of sections 9531, 9551 and 9555 of the Revised Laws of Hawaii 1945, were the efforts of defendant-petitioner, as shown by the record, to secure the relief he seeks, timely made?

We answer question 1 in the affirmative. Section 10685 of the Revised Laws of Hawaii 1945 provides for the assignment of defense counsel in a criminal case and the payment of expenses of preparing the necessary transcript of evidence and records on appeal out of the appropriation for the general expense of a circuit court if (a) the case is pending in such court, (b) the case involves a felony, (c) the defendant requests counsel for his defense, and (d) the defendant shows to the satisfaction of the court that he is unable to obtain counsel.

There is no question that a defendant indicted upon a felony charge is entitled to the benefit of section 10685 if he is indigent and requests assignment of counsel prior to his trial. Question 1 presents a situation where a defendant becomes indigent after his trial and requests assignment of counsel, as well as the preparation of transcript of evidence and other records, at court expense, for the purpose of appeal after his conviction but before perfecting his appeal. We do not think that this situation makes a difference in the applicability of section 10685. The statute contains no limitation as to when the request for counsel and proper showing of indigency must be made. The statutory requirement is that such request and showing be made in a circuit court in which the case is pending. A case is pending in a circuit court until a writ of error is issued or the period for the issuance of such writ expires. "It is only when the proceedings for review have been perfected in accordance with the statutory requirements on the subject that the jurisdiction of the trial court ceases

and that of the appellate court attaches." (4 C. J. S., *Appeal and Error,* § 606.) Also, the statute contains no language which denies the benefit of its provisions to a defendant who had counsel of his choice at his trial. The statute states that when a defendant requests counsel for his defense, such counsel shall be assigned upon a proper showing of indigency. The term "defense" includes the protection of the interest of a defendant not only at his trial but also on appeal. In *State* v. *Hudson,* 55 R. I. 141, 179 Atl. 130, the court stated that the defense of a person conceivably may require proceedings beyond the presentation of his case to the trial court, and held: "Our statute permits the superior court to appoint counsel to defend an indigent person charged with a criminal offense, to insure that every citizen, no matter how humble, shall enjoy the right to a full, fair and impartial trial. The defence of a person charged with crime includes every step in the proceedings from the time of arraignment until his acquittal or conviction, in accordance with the law."

If a counsel for defense is assigned for the trial, it is implicit that such assignment also includes services on appeal, for the statute provides that "the foregoing fees shall be in full remuneration for all services in the circuit and supreme courts performed for the accused person in regard to the offense charged." If such counsel decides to take an appeal, the statute provides that "all expenses of preparing the necessary transcript of evidence and records for the consideration of the supreme court on appeal, exceptions or writ of error, shall be paid out of the appropriation made for the general expense of the circuit court before which the case is pending." The provision just quoted was added to section 10685 by Act 11 of the Session Laws of 1919. In recommending the enactment of the provision, the Senate Judiciary Committee stated: "The object of this bill is to permit defendants charged with felony to

perfect an appeal to the supreme court from a conviction in the circuit court at the expense of the county." (1919 Senate Journal 605.) The fact that a defendant becomes indigent after his trial does not make him any less entitled to the benefit of a statute which clearly extends to appeals from criminal convictions. In *State* v. *Youngblood,* 225 Ind. 375, 75 N. E. (2d) 551, the defendant asked the supreme court of Indiana for a mandate to the trial judge to appoint counsel to represent him on appeal from conviction for forgery and to furnish him the transcript and necessary bill of exceptions for use on such appeal. The court stated: "A convicted defendant in a criminal case in Indiana has a right to counsel at every stage of the proceedings, including the proceedings by which he may seek a review for error by appeal and it is the duty of the court to appoint competent counsel for him if he is a poor person. * * * For the same reasons, if appointed counsel finds bills of exceptions and transcript necessary, they should be furnished without cost to the pauper defendant." The supreme court denied the specific request for appointment of counsel because Indiana has a state public defender to represent any person in a penal institution who is without property or funds to employ his own counsel but extended the time within which the defendant might perfect his appeal through such state public defender.

Quite aside from the provisions of section 10685, where appellate review is provided by statute, the courts cannot discriminate against indigent persons by depriving them of the right to appeal their criminal convictions if the same right is made freely available to those who can afford to pay for such appeal. Under our statute appellate review is a matter of right. Section 9555 of the Revised Laws of Hawaii 1945 provides: "A writ of error may be had as of right in term time or in vacation upon the application of a defendant in a criminal case * * *."

A recent pronouncement on the subject is contained in *Griffin* v. *Illinois*, 351 U. S. 12, in which the Supreme Court of the United States stated: "All of the States now provide some method of appeal from criminal convictions, recognizing the importance of appellate review to a correct adjudication of guilt or innocence. Statistics show that a substantial proportion of criminal convictions are reversed by state appellate courts. Thus to deny adequate review to the poor means that many of them may lose their life, liberty or property because of unjust convictions which appellate courts would set aside. Many States have recognized this and provided aid for convicted defendants who have a right to appeal and need a transcript but are unable to pay for it. A few have not. Such a denial is a misfit in a country dedicated to affording equal justice to all and special privileges to none in the administration of its criminal law. There can be no equal justice where the kind of trial a man gets depends on the amount of money he has. Destitute defendants must be afforded as adequate appellate review as defendants who have money enough to buy transcripts."

*Griffin* v. *Illinois* is a decision involving the constitutional guaranty of due process and equal protection of laws of the Fourteenth Amendment of the Constitution of the United States applicable to the States. However, the principle set forth in the decision should be equally applicable to the Territory under the requirement of due process clause of the Fifth Amendment. (See Antieau, *Equal Protection Outside the Clause,* 40 Cal. L. Rev. 362.)

We also answer question 2 in the affirmative. As discussed above, a request by an indigent defendant, after his trial and while his case is still pending in the circuit court, for assignment of counsel and transcript of evidence and records on appeal at court expense comes within the provisions of section 10685. Under such section, it is within the

discretion of the circuit court to allow counsel fee in an amount deemed appropriate within the range of fees prescribed therein. However, in exercising its discretion in the allowance of counsel fee, the circuit court should be guided by the provision that the fees prescribed in the section cover full remuneration for all services "in the circuit and supreme courts." Where assignment of counsel is made after the trial, service rendered by such counsel will not be as extensive as the service of the counsel appointed prior to trial who not only conducts the defense in the circuit court but also presents the case on appeal.

With reference to question 3, we are of the opinion that if a defendant shows to the satisfaction of the circuit court that he does not have assets, funds or available resources sufficient to prosecute his appeal, the circuit court may assign counsel for his defense and pay all expenses of preparing the necessary transcript of evidence and records on appeal without requiring the defendant to pay such expenses to the extent of his resources. Defendant's possession of assets and funds or availability of resources to him shall, however, be duly weighed in the initial determination of indigency.

In *Adkins* v. *E. I. DuPont de Nemours & Co.,* 335 U. S. 331, which involved a motion for allowance of appeal of a civil action *in forma pauperis* in which appeal costs were estimated at about $4,000, applicants filed affidavits stating that because of poverty they were unable to give security for costs of appeal and still be able to provide themselves and their dependents with the necessities of life, and a member of the firm of lawyers representing them filed an affidavit stating that the liquid assets of his firm did not exceed $2,000. The district judge denied the motion, expressing the thought that all persons interested in the recovery, including the lawyers, "have at least got to chip in to the extent of their ability to pay; and whatever they

have, they have got to put in the pot for the purpose of taking the appeal." The Supreme Court of the United States vacated the order denying the motion, stating: "We cannot agree with the court below that one must be absolutely destitute to enjoy the benefit of the statute. * * * To say that no persons are entitled to the statute's benefits until they have sworn to contribute to payment of costs, the last dollar they have or can get, and thus make themselves and their dependents wholly destitute, would be to construe the statute in a way that would throw its beneficiaries into the category of public charges. The public would not be profited if relieved of paying costs of a particular litigation only to have imposed on it the expense of supporting the person thereby made an object of public support. Nor does the result seem more desirable if the effect of this statutory interpretation is to force a litigant to abandon what may be a meritorious claim in order to spare himself complete destitution." In *Fils* v. *Iberia, St. M. & E. R. Co.*, 145 La. 544, 82 So. 697, where the plaintiffs owned nothing except household effects inventoried at $194 and costs of suit amounted to $425, the court stated: "For being entitled to sue in forma pauperis, it is not necessary that the would-be litigant should be destitute even of a mattress upon which to lie, or a table upon which to eat, or a chair upon which to sit. Moreover, in the present case, the household furniture would not suffice for meeting the cost bill, even if sold at full value. And because friends, or sympathetic or charitable persons, are willing to come to his assistance, rather than see him deprived of legal recourse, detracts in no way from his poverty within the intendment of the forma pauperis act."

We answer question 4 in the affirmative. Under section 9551 of the Revised Laws of Hawaii 1945, a writ of error in a criminal case is issued upon the application of a defendant within ninety days after his sentence. The record

shows that defendant's counsel withdrew from the case, with court approval, on the sixty-fourth day after his sentence without taking any step to obtain a writ of error except for giving oral notice of intention to sue out a writ of error at the time of sentence, although such counsel later certified to the circuit court that in his opinion "in said trial rulings of law were made (to which exception was noted) which injuriously affected the substantial rights of defendant"; that after the withdrawal of his counsel, and within the statutory period for the issuance of writ of error, defendant personally went to the circuit court to take a pauper's oath and, upon denial of his request in the circuit court, went to the office of the clerk of this court and requested permission to file appeal papers prepared by him and to take a pauper's oath, which request was also denied; and that defendant's failure to complete all the requisite steps to obtain a writ of error within the statutory period was due to denial of counsel and transcript of evidence and records to prosecute his appeal. In the following cases attempts to appeal made by indigent defendants under circumstances similar to the instant case were held to be timely made: *State* v. *Hilgemann,* 218 Ind. 572, 34 N. E. (2d) 129; *State* v. *Youngblood,* 225 Ind. 375, 75 N. E. (2d) 551; *Boykin* v. *Huff,* 121 F. (2d) 865.

In *State* v. *Hilgemann,* the supreme court of Indiana, in a proceeding for appointment of counsel on appeal after the withdrawal of counsel at the trial stated: "This original action was begun within the time allowed for the filing of a bill of exceptions and for perfecting an appeal. There has been delay in determining the questions involved. The relator should not be prejudiced by this delay." The court extended the time for perfecting the appeal for sixty days from the filing of the opinion. *State* v. *Youngblood* involved a similar proceeding in the same court. There the court held: "The petition in this action was received

by the Clerk of this court within 90 days after ruling upon his motion for a new trial. There has been delay in disposing of it which should not be allowed to prejudice his right to appeal. Therefore, relator's time for perfecting his appeal is extended to and including March 1, 1948." The decision in that case was rendered on November 19, 1948, and so time to perfect appeal was extended 103 days.

In *Boykin* v. *Huff* the defendant, who was represented by counsel at his trial, was convicted for violation of the pandering act. Within the time allowed for noting an appeal, he wrote to the trial judge a letter, included in the record of the case as Exhibit A, in which he expressed his doubt as to whether he was still represented by counsel and stated: "So, to safeguard my interests, I wish at this date to notify you of my desire to appeal the decision of the Court * * *." The trial judge acknowledged receipt of the letter two days after the time for noting an appeal had expired and stated that the court was forwarding the letter to counsel who represented him at the trial for "matters of this sort must be taken care of by counsel." The trial judge later held a conference with the counsel who represented the defendant at the trial and wrote to the defendant "It seems to be the opinion of all the parties concerned that the possibility of obtaining a reversal in your case is remote, inasmuch as counsel, as well as the Court, feel that you were granted a fair trial. Under the circumstances, I do not feel justified in requesting assigned counsel to prosecute an appeal in your behalf. If you desire this should be done, it will be necessary for you to employ private counsel." Defendant took no further steps to perfect his appeal. The court of appeals held: "We think the appeal may yet be prosecuted. In the circumstances of this case appellant's letter (Exhibit A) may be regarded as sufficient to constitute taking the appeal. What we have said above is, we believe, sufficient to sustain this view,

but we state our reasons explicitly. The letter was filed in time. It was clear cut in its demand that the appeal be taken. That was true though it also expressed hope that counsel would take the appeal formally. The letter was a safeguard against their anticipated failure to do so. That it did not contain all of the details specified in Rule III, Criminal Appeals Rules, 18 U. S. C. A. following sections 688, 1934, 292 U. S. 661, 662, 54 S. Ct. xxxviii, is not material. It set forth the essential things, namely, the identity of the cause and of the appellant and the intention to appeal. Neither the prosecuting officers nor the court could have been misled or prejudiced by any of the omissions."

In the instant case the period within which a writ of error may be issued, as provided in section 9551 has long since expired. However, under section 214-3 of the Revised Laws of Hawaii 1955 (R. L. H. 1945, § 9603) this court is authorized to correct errors in all courts of inferior jurisdiction where no other remedy is expressly provided by law. Under such authority we extend the time within which a writ of error may be issued in this case to July 31, 1957, and remand the case to the trial court for appropriate action consistent herewith.

*Ted T. Tsukiyama, Amicus Curiae* (also on the brief), for defendant.

*Kenneth W. Harada,* Assistant Public Prosecutor, City and County of Honolulu (also on the brief for the Territory; *David K. Nakagawa,* Deputy Attorney General, with him on the brief), for *Joseph C. Harper,* Warden Oahu Prison.