64 So.2d 588

**MONK v. STATE.**

3 Div. 638.

Supreme Court of Alabama.

April 2, 1953.

604

Robt. E. Coburn, Jr., Montgomery, for appellant.

Si Garrett, Atty. Gen. and Robt. Straub, Asst. Atty. Gen., for the State.

BROWN, Justice.

This is the appeal of Leonard Monk from the judgment of conviction and sentence of death entered by the Circuit Court of Montgomery County on the verdict of a jury duly impaneled in said court, finding him guilty of robbery as charged and fixing the penalty at death.

The evidence offered by the State goes to show that the appellant and four other convicts lawfully in the custody of the guards of Kilby Prison, through preconcert procured firearms by force or stealth from their place of storage where such arms were kept by the prison authorities, and made their escape from such custody,—a felony denounced by the statute. Code of 1940, Title 14, § 149.

In furtherance of said conspiracy the defendant by armed force and putting in fear entered the residence of James W. Pearson and obtained from him the keys to his automobile. Subsequently by force and putting in fear, after an effort to start the automobile and failure to do so, defendant and his companions returned to the house of said Pearson and by force and putting in fear required the said Pearson to enter his automobile and start the same. In furtherance of their efforts to escape, one of their number aided and abetted by the others, drove said automobile from the prison grounds through the Town of Boylston into the City of Montgomery, holding said Pearson as hostage to prevent the pursuing officers of the law from shooting at them and the automobile. In furtherance of said conspiracy some one of them shot and wounded one of the prison guards and shot and severely wounded Julius E. Ingram, a policeman of the Town of Boylston, and finally wrecked the automobile on North Court Street in the City of Montgomery, near the Montgomery Water Works, where they were apprehended and returned to custody.

On arraignment and trial the appellant Monk pleaded not guilty and was represented by Robert E. Coburn, Jr., an attorney of his own selection, who was appointed subsequently by the court to represent the appellant on this appeal under the Automatic Appeal Statute. Code of 1940, Title 15, § 382(5), Pocket Part.

The jury returned its verdict on the 5th of December, 1951, and on the 4th of January, 1952, the defendant filed with the clerk of the circuit court a motion for a new trial upon the general ground that the verdict of the jury was contrary to the evidence, contrary to the great weight of the evidence, contrary to law and on other grounds. So far as the record shows said motion was not called to the court's attention. However, at the conclusion of the evidence the defendant made motion to exclude all the evidence upon the ground that it was insufficient to warrant a verdict of guilty. This practice has been approved in criminal trials. Randolph v. State, 100 Ala. 139, 14 So. 792; Stewart Bros. v. Ransom, 200 Ala. 304, 76 So. 70; Taylor v. State, 15 Ala.App. 72, 72 So. 557; Britton v. State, 15 Ala.App. 584, 74 So. 721; Ex parte Grimmett, 228 Ala. 1, 152 So. 263. The evidence is without dispute that the entire occurrence, including the escape and other incidents, occurred in Montgomery County, Alabama. We are of opinion that the evidence warranted the overruling of the motion to exclude the entire evidence.

In the case of Hill v. State, 145 Ala. 58, 60, 40 So. 654, it was observed:

"* * * The statute in this state fixes the punishment of robbery only, and we are remitted to the common law for a definition of the offense. Pretermitting the grounds of demurrer as to the averment of the ownership in

one and the taking from another, the indictment was defective by reason of the alternative averment of the taking from the 'person or possession' of Lula Mots. Blackstone defines robbery to be 'the felonious and forcible taking from the person of another of goods or money to any value by violence or putting him in fear.' And all of the authors, while departing in some respects from the language used by Mr. Blackstone, contain in their definition the same ingredients, and none of which contemplates a taking from a bare possession, but provide that the taking should be from the person.

"A man might have the possession of a thing, yet it might not be upon his person, or under his direct personal control. Mr. Bishop, in his work on Criminal Law (volume 2, §§ 1177, 1178), in discussing what may be deemed the 'person,' says: 'Since robbery is an offense as well against the person as the property, the taking must be, in the language of the law, from the person. The meaning of this legal phrase is, not that the taking must necessarily be from the actual contact of the body, but if it is from under the personal protection that will suffice. Within this doctrine, the person may be deemed to protect all things belonging to the individual, within a distance not easily defined over which the influence of the personal presence extends. "If a thief, says Lord Hale, come into the presence of A., and, with violence and putting A. in fear, drives away his horse, cattle, or sheep, he commits robbery." The better expression is, that a taking in the presence of an individual (of course, their being put in fear) is to be deemed a taking from his person.' Our own court, in the case of Thomas v. State, 91 Ala. 34, 9 So. 81, speaking through McClellan, C. J., *receded* from the opinion in the case of James v. State, 53 Ala. 380, saying: 'The offense is against the actual possession, in the very nature of things. The person offended against must have either the manucaption of the property, or it must at least be in his presence,

and under his direct physical, personal control.' "

After a careful examination of the evidence we are not of opinion that the verdict of the jury was contrary to the great weight of the evidence and are clear to the conclusion that the evidence was sufficient to carry the case to the jury. Easley v. State, 246 Ala. 359, 20 So.2d 519.

We will refer to and treat the charges, which are unnumbered, as they appear on the record at page 53. The first charge requires an acquittal of the defendant "if any member of the jury have a reasonable doubt of the guilt of the defendant, * * *". This is not the law. The second charge authorized an acquittal if the jury finds conflict in the evidence and was properly refused. The next two charges are the affirmative charge for the defendant and were properly refused. The next charge authorizes acquittal if any witness for the state is shown to be biased or prejudiced against the defendant. This charge was well refused. The next charge which deals with interest or bias of a witness is confusing and unintelligible and was well refused. The next charge (7) is argumentative as well as unsound. The next charge, on page 54, was fully covered by the oral charge of the court and unsound in law. The second charge on page 54 is not only unsound, but is confusing and unintelligible. The last charge refused (10) likewise is not expressed in the exact and appropriate language of the law, is argumentative and patently unsound. Hudson v. State, 217 Ala. 479, 116 So. 800.

The witness Louis Miller on his direct examination by the solicitor testified that he was a Captain on the Detective Force of the Police Department of the City of Montgomery and was so employed on October 22, 1951. After testifying that the defendant, who was in their presence taking the paraffin test on his hands for the discovery of gunpowder, and that no one threatened the defendant or offered him a reward to get him to testify, the witness Miller was asked: "Did you have a conversation with him about the robbery of that automobile?" and he answered, "Yes, sir." He was then asked:

"Q. Will you repeat the conversation to the jury. A. I asked Monk how much time he already had. (Objection being interposed and overruled by the court, an exception was noted.)

"The Witness: Monk says he has two hundred and eight years. I told Monk at the time we were giving him the paraffin test on his hands—we were trying to find out who shot the policeman—I asked Monk if he did any shooting. He said no, he didn't do any shooting. I asked him who was driving the car coming down Court Street. He said he didn't know. I asked him, 'Could you tell me who was doing the shooting out there?' He said, 'I don't know.' I said, 'How much time, Monk, have you got?' He said, 'I got two hundred and eight years.' He said, 'I got two hundred and eight years, and got a very short memory.' And he was laughing and having a big time down there."

▮▮▮▮▮ The general rule that a confession, a statement by one accused of crime, directly or by necessary inference admitting his guilt, is receivable in evidence, provided it ·complies with certain requirements of procedure, is not questioned in. any quarter. Chamberlain's Modern Law of Evidence, Vol. II, § 1472; Green v. State, 160 Ala. 1, 49 So. 676; Heningburg v. State, 153 Ala. 13, 45 So. 246; Hamilton v. State, 147 Ala. 110, 41 So. 940; Smith v. State, 142 Ala. 14, 39 So. 329. Procedural rules controlling confessions are in the main two: (1), the affirmative; the other, the negative. The affirmative rule may be stated as follows:

An incriminating statement directly suggesting guilt of the crime charged, certain and complete in itself, made by a defendant in a criminal proceeding or by someone entitled under the rule of. substantive law to affect him by declaration, is admissible against such defendant, provided such declaration is voluntary. Each of these requirements is one of procedure and enforced with much stringency. The negative rule is to the effect that no confession or inculpatory admission not voluntary will be received in evidence. Chamberlain's

Modern Law of Evidence, Vol. II, § 1472; McAdory v. State, 62 Ala. 154, 161; Bonner v. State, 55 Ala. 242, 245. It is essential to the admissibility of such confession or inculpatory admission that it should have been a declaration made by a party accused of the crime involved in the proceeding. Chamberlain's Modern Law of Evidence, supra, § 1473. Statements confessory in nature, though not a complete admission of guilt, are subject to the same rules of admissibility in this jurisdiction. Alabama Digest, Criminal Law, ☞406(1).

In his work on Evidence, Prof. Chamberlain continues in § 1475: "While every confession must be an incriminating statement, it by no means necessarily follows that every incriminating statement is a confession. * * *." And in § 1476 he further observes: "Confession is a term which commonly ·is and always should be reserved to designate an acknowledgment of guilt of criminal liability or of such facts as unless justified directly and necessarily implied such liability. * * *." See Davis v. State, 152 Ala. 82, 44 So. 545.

"A confession, to be receivable as such, must be an admission by accused that he is guilty of the precise crime with which he is charged. ·Confession of another crime not separable from competent confession of crime charged, may go to jury under cautionary directions; but if separable, its admission is reversible· error. * * *." Underhill's Criminal Evidence, 4th Ed., p. 513, § 265; Robinson v. United States, 61 App.D.C. 370, 63 F.2d 147.

" * * * the general rule (to which, however, some very important exceptions may be noted) forbids the introduction of evidence which will show, or tend to show, that the accused has committed any crime wholly independent of that offense for which he is on trial. * * *." Underhill's Criminal Evidence, 4th Ed., p. 310, § 80; Mason & Franklin v. State, 42 Ala. 532; Glover v. State, 21 Ala.App. 423, 109 So. 125; Little v. State, 24 Ala.App. 484, 136 So. 864.

▮▮▮▮▮ In the absence of averment in the indictment as to former conviction and sentence, evidence offered to show such conviction and sentence is neither relevant

nor material to the issue being tried. Ex parte State ex rel. Davis, Attorney General, 206 Ala. 546, 90 So. 278. The statement by the defendant in response to the inquiry of the witness Miller hereinabove set out as to how much time he had been given already, under the applicable rule, is not a confession. Nor was such statement an inculpatory admission or one confessory in nature to warrant its introduction within the rule of our cases governing admissibility. The admission of such testimony in evidence was calculated to prejudice the jury and probably induced the verdict giving the appellant the death penalty. For the error of the court in admitting this statement as evidence, the judgment of the circuit court is due to be reversed. Code of 1940, Tit. 15, § 382(10); Easley v. State, 246 Ala. 359, 20 So.2d 519; Alberson v. State, 254 Ala. 87, 47 So.2d 182. It is so ordered.

Reversed and remanded.

All the Justices concur.

LIVINGSTON, C. J., not sitting.