[Crim. No. 6655.    In Bank.    Dec. 22, 1960.]

THE PEOPLE, Respondent, v. JOSEPH BROWN,
Appellant.

Gerald L. Rosen, under appointment by the Supreme Court, for Appellant.

Stanley Mosk, Attorney General, and William E. James, Assistant Attorney General, for Respondent.

THE COURT.—The trial court, sitting without a jury, found defendant guilty of offering to sell narcotics in violation of section 11500 (now renumbered and hereafter called § 11501) of the Health and Safety Code. It also found that he was previously convicted of attempted robbery, denied his motion for new trial, and sentenced him to imprisonment in the state penitentiary for the term prescribed by law. Defendant appeals.

The public defender represented defendant at the trial, but did not undertake to do so on appeal. (See Gov. Code, § 27706.) Defendant requested the District Court of Appeal, Second District, Division Three, in which the appeal was pending, to appoint an attorney to represent him, claiming that he was without funds to employ counsel. The court made an independent investigation of the record, determined that representation by counsel would be of no benefit to defendant or to the court, and denied the request. (See *People* v. *Hyde,* 51 Cal.2d 152, 154 [331 P.2d 42].) Defendant prepared and filed a brief in propria persona. The court affirmed the judgment. (*People* v. *Brown,* (Cal.App.) 3 Cal.Rptr. 203.) We granted defendant's petition for hearing in this court and appointed counsel to represent him.

Officer Walton, an undercover narcotics agent, had arranged to buy heroin from an unidentified person and was awaiting delivery when defendant walked up to him and asked if he were a policeman. He replied that he was not. When defendant then asked him what he was waiting for, he replied that he was expecting a delivery of heroin. Defendant then left.

While sitting in a bar the following afternoon, Officer Walton saw defendant on the street and called to him, and defendant entered the bar. Officer Walton testified: ''I told him that I would like to know who put the jacket on me, meaning who said that I was a policeman; and the defendant stated that he couldn't tell me that, but that he didn't think I was a policeman because I didn't look the type and I told him that I wanted to get some stuff, meaning heroin; and he stated that he could get it for me but if I turned him in, well, the people around that area would know who burned him—meaning had

him arrested.'' Officer Walton told defendant that he did not want to get burned again, meaning that he did not want to part with his money without receiving narcotics in return. Defendant answered that if Officer Walton wanted ''it,'' he would have to take some risks. Officer Walton then gave defendant $9.00 and defendant left. Officer Walton waited for some time, but defendant did not return.

He saw defendant again three or four days later and asked him why he had not returned to the bar. Defendant answered ''that he had it and he was on his way back but the police rousted him and he had to get rid of it.'' He again encountered defendant about a week and a half later and called to him '' [t]hat was a pretty dirty deal you pulled on me the other day.'' Defendant replied that he would speak to him later. He did not see defendant again until his arrest. Defendant did not deliver heroin or any other substance to Officer Walton in return for the $9.00.

In his briefs filed in the District Court of Appeal, defendant contends that a specific intent to sell narcotics is an essential element of the crime of offering to sell narcotics under section 11501 of the Health and Safety Code[1] and that this intent cannot be inferred from the making of the offer alone. He asserts that the making of such an offer is equally attributable to an intent to obtain money by false pretenses. His counsel makes the additional contention that by proscribing offers to sell the Legislature in effect proscribed one form of attempts to sell and that therefore we must look to the law of attempts to determine whether an oral offer to sell constitutes an attempt to sell. He asserts that the oral offer and the taking of the money were only preparation to making a sale

---

[1]Section 11501 provides: ''Except as otherwise provided in this division, every person who transports, imports into this State, sells, furnishes, administers or gives away, or offers to transport, import into this State, sell, furnish, administer, or give away, or attempts to import into this State or transport any narcotic other than marijuana except upon the written prescription of a physician, dentist, chiropodist, or veterinarian licensed to practice in this State shall be punished by imprisonment in the county jail for not more than one year, or in the state prison from five years to life.

''If such a person has been previously convicted of any offense described in this division or has been previously convicted of any offense under the laws of any other state or of the United States which if committed in this State would have been punishable as an offense described in this division, the previous conviction shall be charged in the indictment or information and if found to be true by the jury, upon a jury trial, or if found to be true by the court, upon a court trial, or is admitted by the defendant, he shall be imprisoned in the state prison from 10 years to life.''

and that neither was a direct, unequivocal act toward a sale. (See *People* v. *Gallardo,* 41 Cal.2d 57, 66 [257 P.2d 29], and cases cited.) Since in his view such an act is an essential element of the corpus delicti of an offer to sell within the meaning of section 11501, it cannot be proved by defendant's extrajudicial admission standing alone that "he had it and he was on his way back but the police rousted him and he had to get rid of it." (See *People* v. *Duncan,* 51 Cal.2d 523, 528 [334 P.2d 858]; *People* v. *McMonigle,* 29 Cal.2d 730, 738 [177 P.2d 745].)

Both defendant's and his counsel's contentions are consistent with the position taken by the Subcommittee on Narcotics of the Assembly Interim Committee of the Judiciary in 1953 when it proposed the adoption of two new sections of the Health and Safety Code, only one of which was enacted. Section 11503 makes it a crime to offer to sell a narcotic and then deliver a substitute.[2] Proposed section 11509 (§ 10 of Assembly Bill No. 2243, 1953 Session) would have made it a crime to offer to sell a narcotic coupled with the acceptance of money, even though there was no delivery of anything.[3]

In recommending the passage of section 11503, the subcommittee stated: "[This section] will be entirely new law. This will cover the individual who agrees to sell, furnish, transport, or give away any narcotic, and then delivers some other liquid, substance, or material. These individuals are known to be in a position to violate the law; but, for some reason, they may feel that they are dealing with a law enforcement officer and thus deliver tobacco, water, or some other

[2]Section 11503 provides that "Every person who agrees, consents, or in any manner offers to unlawfully sell, furnish, transport, administer, or give any narcotic to any person, or offers, arranges, or negotiates to have any narcotic unlawfully sold, delivered, transported, furnished, administered, or given to any person and then sells, delivers, furnishes, transports, administers, or gives, or offers, arranges, or negotiates to have sold, delivered, transported, furnished, administered, or given to any person any other liquid, substance, or material in lieu of any narcotic shall be punished by imprisonment in the county jail for not more than one year, or in the state prison for not more than 10 years."

[3]Proposed section 11509, as amended March 9, 1953, read: "Every person who agrees, consents, or in any manner offers, to sell, deliver, furnish, transport, administer, or give, or arranges or negotiates to have sold, delivered, furnished, transported, administered, or given to any person any narcotic in violation of any provision of this division and accepts any money, thing of value, or other consideration in full or partial payment is guilty of a felony, and upon conviction thereof shall be confined in the county jail for not less than 60 days nor more than one year, or in the state prison for not more than 5 years."

substance with the result that they have had the intent to commit the crime but are testing out the officer. At the present time nothing can be done to that person, except to charge [him] with 'bunco.' Under this statute, it provides a penalty of not more than one year in the county jail or in the state prison for 10 years." The subcommittee thus made clear its view that section 11501 did not encompass an offer to sell a narcotic and subsequent delivery of a substitute. *A fortiori* it would not encompass an offer to sell a narcotic and subsequent failure to deliver anything, which proposed section 11509 envisaged.

Whether the subcommittee's view was based on the theory that an offer alone to sell a narcotic is insufficient evidence of a specific intent to make such a sale or on the theory that offer means attempt and that some additional act is required to constitute an attempt does not appear. ▮▮ In any event, the subcommittee's interpretation of the existing statute is not conclusive. Even if it is assumed that by enacting section 11503 the Legislature impliedly excluded the conduct therein proscribed from the more inclusive language of section 11501, it did not affect the scope of section 11501 in relation to defendant's conduct in this case.

▮▮ We agree with defendant's contention that a specific intent to sell a narcotic is an essential element of the crime of offering to make such a sale under section 11501. (See Pen. Code, § 20; *Matter of Yun Quong,* 159 Cal. 508, 514-515 [114 P. 835, Ann.Cas. 1912C 969]; *People* v. *Winston,* 46 Cal.2d 151, 158 [293 P.2d 40]; *People* v. *Vogel,* 46 Cal.2d 798, 801 [299 P.2d 850].) ▮▮ In view, however, of defendant's subsequent admission that "he had [the stuff] and he was on his way back but the police rousted him and he had to get rid of it," and the absence of any compelling evidence that defendant's offer was false, the trial court could reasonably conclude that defendant meant what he said when he stated to the officer that for $9.00 "he would get it for me. . . . He would get the stuff for me." ▮▮ Moreover, there is nothing in section 11501 to support the contention that an offer to sell means an attempt to sell, for it proscribes both "offers to transport, import into this State, sell, furnish, administer, or give away" and "attempts to import into this State or transport any narcotic. . . ." By thus distinguishing between offers and attempts the Legislature made clear that the requirement of a direct, unequivocal act toward a sale necessary for an attempt to make a sale is not an implied element of an offer to sell.

The judgment and the order denying the motion for new trial are affirmed.

TRAYNOR, J.—I concur in the judgment. It is my opinion, however, that the holding in *People* v. *Hyde,* 51 Cal.2d 152, 154 [331 P.2d 42], should be expanded to require the appointment of counsel on appeal for all indigent defendants convicted of felonies.[1]

---

[1] The problem has attracted nation-wide attention. The subcommittee to study defender systems of the Association of the Bar of the City of New York and the National Legal Aid Association concluded in their report, *Equal Justice for the Accused 61* (Doubleday, 1959) that "[i]n addition to affording early representation, any defender system should make provision for the continuance of representation through appeal in appropriate cases. An appeal when grounds exist is an inseparable part of the process through which the individual's guilt or innocence of the charges brought against him by the state is established. Counsel is needed to assist with the determination of whether an appeal should be taken and, if an appeal is taken, to prepare and present it."

State practice varies. Two states require the appointment of counsel on appeal in all felony cases. (Indiana: *State* ex rel. *White* v. *Higelmann,* 218 Ind. 572, 578 [34 N.E.2d 129]; *State* ex rel. *Grecco* v. *Allen Circuit Court,* 238 Ind. 571, 575 [153 N.E.2d 914]; Wisconsin: Wis. Stat. Ann. § 957.26(3), [if the court is satisfied that "review is sought in good faith and upon reasonable grounds"].) In New York the appointment of counsel on appeals turns upon whether the indigent defendant has a copy of the trial minutes. If he does, no counsel is appointed (*People* v. *Breslin,* 4 N.Y.2d 73, 86-87 [149 N.E.2d 85]); otherwise appointment is mandatory (*People* v. *Kalan,* 2 N.Y.2d 278, 280 [140 N.E.2d 357]; *People* v. *Pitts,* 6 N.Y.2d 288, 292-293 [160 N.E.2d 523]). Wyoming places discretion in the Supreme Court to appoint counsel for indigent defendants "in any criminal matter or proceeding before said Supreme Court." (Wyo. Stats. 1957, § 7-8.) Several states appoint counsel at the trial who has discretion to appeal at public expense. (Connecticut: *State* v. *Klein,* 95 Conn. 451, 453 [112 A. 524] [public defender]; *State* v. *Zukauskas,* 132 Conn. 450, 451-452 note [45 A.2d 289]; Iowa: Iowa Code Ann. tit. 36 § 775.5 (1959 Pocket Part), *Tomlinson* v. *Monroe County,* 134 Iowa 608, 610 [112 N.W. 100]; Michigan: Mich. Stat. Ann. § 28.1254; Minnesota: Minn. Stat. Ann. § 611.07(2) (1959 Pocket Part) [Review must be sought "in good faith and upon reasonable grounds." The provision may apply only when trial counsel was appointed by the court, *cf.* *State* v. *Coursolle,* 255 Minn. 384, 390 [97 N.W.2d 472]]; Mississippi: Miss. Code Ann. 1942 § 2505 [capital cases only]; Nevada: Nev. Rev. Stat. §§ 177.065(2), 7.260; Pennsylvania: Penn. Stat. Ann. tit. 19 § 1232.) Other states require appointment of counsel on appeal only in capital cases. (Alabama: Ala. Code tit. 15 § 382 (5) (1955 Pocket Part), [applied but not discussed in *Monk* v. *State,* 258 Ala. 603 [64 So.2d 588]]; Florida: Fla. Stat. Ann. § 909.21 (1959 Pocket Part), [applied, *State* ex rel. *Shargaa* v. *Culver,* Fla., 113 So.2d 383]; Georgia: Ga. Code Ann. § 27-3002 (1958 Pocket Part); Illinois: Ill. Rev. Stat. 1959, ch. 38 § 730a; Kansas: Gen. Stat. of Kan. § 62-1304 (1959 Supp.) (first degree murder only); Nebraska: Rev. Stat. of Neb. 1943 §§ 29-1803, 29-1804 (1959 Cum. Supp.); North Carolina: Gen. Stat. of No. Car. § 15-181; Oklahoma: *Noel* v. *State,* 17 Okla. Crim. 308, 318-322 [188 P. 688]; Oregon: Ore. Rev. Stat. § 138.420 (1959 Replacement);

The question calls for resolution even though we appointed counsel to represent defendant in this court. The question cannot remain in abeyance. This very case illustrates the recurring practice of the District Court of Appeal, Second District, Division Three, of referring the question of the appointment of counsel to the local bar association committee (see *People* v. *Logan,* 137 Cal.App.2d 331, 332 [290 P.2d 11]) and the consequent countervailing practice of this court to then grant a hearing, even on its own motion, whenever there has been no appointment of counsel. There would be no end to such wasteful procedure were the question deemed moot each time this court granted a hearing and appointed counsel. The question should be settled in the interest of effective appellate court administration. (See *Almassy* v. *Los Angeles County Civil Service Com.,* 34 Cal.2d 387, 390 [210 P.2d 503]; *Walling* v. *Mutual Wholesale Food & Supply Co.,* 141 F.2d 331, 334-335; *People* ex rel. *Wallace* v. *Labrenz,* 411 Ill. 618 [104 N.E.2d 769, 772]; *State* ex rel. *Smith* v. *Smith,* 197 Ore. 96 [252 P.2d 550, 563]; 103 U. of Pa. L. Rev. 772, 783, 787-793; 132 A.L.R. 1185, 1186.)

In *Griffin* v. *Illinois,* 351 U.S. 12 [76 S.Ct. 585, 100 L.Ed. 891, 55 A.L.R.2d 1055], the Supreme Court of the United States held that a state may not deny to a defendant, on the sole ground that he cannot pay for it, a stenographic transcript of the trial proceedings when it is essential to effective appellate review. The court declared that although there is no constitutional right to appeal, ''that is not to say that a State that does grant appellate review can do so in a way that discriminates against some convicted defendants on account of their poverty. Appellate review has now become an integral part of the Illinois trial system for finally adjudicating the guilt or innocence of a defendant. Consequently at all stages of the proceedings the Due Process and Equal Protection clauses protect persons like petitioners from invidious discriminations.'' (*Id.* at p. 18.)

Although this holding establishes only the right to a transcript, it indicates the Supreme Court's concern to protect indigent defendants against discriminatory consequences of

*cf. Anonymous,* 76 Me. 207 (1st case, 1884).) Three states refuse to appoint counsel on appeal. (Rhode Island: *State* v. *Hudson,* 55 R.I. 141, 153 [179 A. 130, 100 A.L.R. 313], followed, *Lee* v. *Kindelan,* 80 R.I. 212, 217-218 [95 A.2d 51], cert. den., 345 U.S. 1000 [73 S.Ct. 1146, 97 L.Ed 1406]; Tennessee: *State* ex rel. *Fisher* v. *Bomar,* 201 Tenn. 579, 581 [300 S.W.2d 927]; Texas: *Spalding* v. *State,* 137 Tex. Crim. 329, 334 [127 S.W.2d 457]; *cf. State* v. *Singletary,* 187 S. C. 19, 28 [196 S.E. 527].)

their poverty. Denial of counsel on appeal would seem to be a discrimination at least as invidious as that condemned in *Griffin* v. *Illinois, supra.* (See *State* v. *Delaney,* 221 Ore. 620 [332 P.2d 71, 74-81]; *The effect of Griffin* v. *Illinois on the States' Administration of the Criminal Law,* 25 U. of Chi. L. Rev. 161, 170-171; *Appointment of Counsel for Indigent Defendants in Criminal Appeals,* 1959 Duke L.J. 484, 488-489.) We need not determine this constitutional question, however, for there are adequate independent grounds for the conclusion that appellate courts must appoint counsel on appeal for all indigent defendants convicted of felonies.

Appointment of counsel is essential to minimize hazards of affirming an erroneous judgment, particularly in view of rule 33 of the Rules on Appeal. This rule defines "normal record" on appeal and "additional record." If the defendant wants the record on appeal to include matters that are part of the "additional record," he must file "with his notice of appeal an application describing the material which he desires to have included and the points on which he intends to rely which make it proper to include it." It is unreasonable to expect the average indigent defendant without counsel to obtain an adequate record on appeal. He would ordinarily be incarcerated, without access to the trial court's files, and cut off from consultation with his trial defense counsel, the trial judge, the prosecutor, and other witnesses to the trial. He would probably be without access to law books and unable to designate points that make it proper to include an additional record. He would probably be unaware of rule 33, or so unfamiliar with it that he would fail to realize that the normal record does not include rulings on motions, the *voir dire* examination of jurors, the opening statements and arguments to the jury, comments on the evidence by the trial judge, instructions given or refused, and rulings on the admissibility of exhibits. He would not be alert, as would an attorney, to possible reversible errors therein even when they amounted to a denial of constitutional rights. (See *People* v. *Barrett,* 207 Cal. 47, 49 [276 P. 1003] [manner in which the trial judge conducted the *voir dire* examination of the jurors amounted to a denial of the constitutional right to trial by jury].)

Even a court cannot make an adequate review on less than the whole record. *A fortiori,* an attorney called upon by a local bar association and unknown to defendant or trial counsel cannot evaluate the merits of an appeal on less than

the whole record. It is unpredictable how far an appellate court would advance toward a determination of the merits of an appeal by ordering the preparation and transmission to it of the whole record. In any event, it would then vitiate rule 33, designed to avoid preparation and review of nonessential parts of the record.

An appellate court can no more appropriately judge whether there is error requiring reversal without the benefit of counsel than a trial court can decide the issues at the trial without benefit of counsel. (See *Kopasz* v. *Kopasz*, 34 Cal.2d 423, 425 [210 P.2d 846].) How then can it determine that there is no error requiring appointment of counsel? How can it undertake to dispense with counsel for indigents when it is not free to dispense with counsel for those who can afford them? A court does not suddenly become omniscient when the appellant proves impecunious. Thus in *People* v. *Tahtinen*, 50 Cal.2d 127 [323 P.2d 442], this court was divided on the merits, yet the attorney to whom the record was referred by the local bar association committee at the instigation of the District Court of Appeal thought there was no reasonable basis for an appeal, and that court accordingly denied defendant's request for appointment of counsel. In the present case that court rejected the attorney's recommendation for appointment of counsel, declaring that the appeal was "without a semblance of merit." ((Cal.App.) 3 Cal.Rptr. 203, 205.) Yet this court, after ordering a hearing and appointing counsel, now finds that there are substantial legal issues demanding careful research and analysis that demonstrate the risk of fallibility of judgment without benefit of counsel's advocacy.

Moreover, appointment of counsel promotes effective appellate court administration. Denied counsel, defendants frequently file briefs in propria persona raising issues of little or no merit that still require the attorney general's answer and the court's consideration. Often when a District Court of Appeal affirms the judgment, a defendant files a petition for hearing in this court that does not comply with rules 28 and 29, which presuppose an orderly presentation of the case before the District Court of Appeal. When a defendant is incapable of making such a presentation, this court has a correspondingly heavy burden in reviewing his petition.

The court as well as defendant is more likely to benefit from oral argument, as well as from briefs presented by counsel rather than by defendant in propria persona. More-

over, the first alternative also avoids possible complications of habeas corpus and the transportation of defendant under guard. There is no reason to forego these advantages of argument by counsel, particularly when the defendant might be driven to the second alternative to secure his right to oral argument on appeal implicit in rules 22 and 28(f) of the Rules on Appeal. (*Metropolitan Water Dist.* v. *Adams,* 19 Cal.2d 463, 467-468 [122 P.2d 257]; see Pen. Code, § 1253; Witkin, *New California Rules on Appeal,* 17 So. Cal. L. Rev. 232, 243-244.)

The problem is not averted merely because Government Code, section 27706, makes it the duty of the public defender to prosecute appeals "where, in his opinion, the appeal will or might reasonably be expected to result in the reversal or modification of the judgment of conviction." Comparable discretion vested in federal district judges is subject to appellate review, and counsel must be appointed to assist the defendant in showing that his appeal has merit. (*Johnson* v. *United States,* 352 U.S. 565, 566 [77 S.Ct. 550, 1 L.Ed.2d 593]; see also *Eskridge* v. *Washington State Board of Prison Terms & Paroles,* 357 U.S. 214 [78 S.Ct. 1061, 2 L.Ed. 2d 1269]; *Farley* v. *United States,* 354 U.S. 521, 522-523 [77 S.Ct. 1371, 1 L.Ed. 2d 1529]; see also *People* v. *Kalan,* 2 N.Y.2d 278 [140 N.E.2d 357, 358]; *State* ex rel. *White* v. *Hilgemann,* 218 Ind. 572 [34 N.E.2d 129, 131].) Moreover, it sometimes happens that defendants who were able to retain counsel at the trial are indigent at the time of appeal. It would be capricious to make a defendant's right to appointment of counsel on appeal depend on the chance that he was represented by the public defender at the trial.

In the interest, therefore, of orderly as well as just review an appellate court should appoint counsel upon the request of an indigent defendant convicted of a felony. Any implications to the contrary in *People* v. *Hyde,* 51 Cal.2d 152, 154 [331 P.2d 42]; *People* v. *Logan,* 137 Cal.App.2d 331, 332-333 [290 P.2d 11]; *People* v. *McGrory,* 137 Cal.App.2d 723, 724 [291 P.2d 43]; *People* v. *Hamm,* 145 Cal.App.2d 242, 244 [302 P.2d 345]; and *People* v. *Slater,* 152 Cal.App.2d 814, 815-816 [313 P.2d 111], should be disapproved.

Of course appointed counsel should not present frivolous appeals. (See *Ellis* v. *United States,* 356 U.S. 674, 675 [78 S.Ct. 974, 2 L.Ed.2d 1060], discussed in Ehrenhaft, *Indigent Appellants in the Federal Courts,* 46 A.B.A.J. 646, 647; *State* ex rel. *White* v. *Hilgemann,* 218 Ind. 572, 578-579 [34 N.E.2d

129].) It is for counsel to make a reasonable investigation, ordinarily involving consultation with the defendant, to insure consideration of meritorious grounds of appeal. (See *United States* v. *Sevilla*, 174 F.2d 879, 880.) Should he then conclude that the appeal is frivolous, he should so advise the court and the defendant. He need not proceed with the appeal; should the defendant insist on proceeding with it, the court need not appoint new counsel. (*People* v. *Tabb*, 156 Cal.App.2d 467, 471-472 [319 P.2d 656].)

The reasons for appointment of counsel on appeal from judgments of conviction do not extend to habeas corpus or other collateral attacks on final judgments of conviction unless the defendant presents a prima facie case for relief. "This procedural requirement does not place upon an indigent prisoner who seeks to raise questions of the denial of fundamental rights in propria persona any burden of complying with technicalities; it simply demands of him a measure of frankness in disclosing his factual situation." (*In re Swain*, 34 Cal.2d 300, 304 [209 P.2d 793].) Our reluctance to consider even constitutional questions on habeas corpus if they could have been raised on appeal (see *In re Dixon*, 41 Cal.2d 756, 759-761 [264 P.2d 513]) makes it all the more important to afford defendants a fair opportunity to challenge their convictions on appeal.

Appointment of counsel on appeal should reduce applications for post-conviction remedies in the federal courts as well as our own.[2] As the report of July 5, 1960, of the Habeas Corpus Committee of the National Association of Attorneys General points out, the states can largely obviate review of their decisions in criminal cases by federal district courts on habeas corpus petitions by providing adequate state remedies.

This discussion is limited to felonies because of the substantially less serious nature of misdemeanors and their correspondingly lighter penalties. (See Pen. Code, §§ 17-19b.) The misdemeanant suffers no loss of civil rights. (See Pen. Code, §§ 2600-2601.) He is entitled to bail as a matter of right after conviction pending appeal. (Pen. Code, § 1272.) Any incarceration is likely to be brief. Frequently a misdemeanant is penalized only by fine, often payable in installments. (See Pen. Code, § 1205.) The court may grant probation summarily (Pen. Code, § 1203b) to the misdemeanant or permit him to

---

[2]In the two-week period from July 25, 1960, to August 5, 1960, this court denied seven petitions for habeas corpus from the same prisoner, who had taken his appeal in propria persona.

serve time on weekends or at times when he is not working. With earning capacity thus maintained he may be able to employ counsel. Most misdemeanants are willing to forfeit bail or pay the fines and find it unnecessary to employ counsel or request trial. There is hence not the urgency for making appointment of counsel on appeal for indigent misdemeanants mandatory instead of discretionary.

Peters, J., and Dooling, J., concurred.

SCHAUER, J.—I concur only in the judgment. I am impelled to point out that the discussion, in the opinion by the court (*ante*, pp. 67-68), of purported interpretation of section 11501 of the Health and Safety Code by the 1953 proposal of legislation, expression of views by an assembly subcommittee, and adoption of section 11503 (former § 11502, enacted in 1953) by the Legislature, is neither necessary nor appropriate. The argument concerning these matters was not advanced either by defendant in propria persona or by counsel appointed for him, but originated in this court. The notion that these matters which occurred in 1953 could evidence what the Legislature meant when it created the crime of offering to sell a contraband narcotic in 1909[1] appears to me so obviously lacking in merit as not to warrant inclusion in an appellate opinion; rather, such notion appears to be stated for no other purpose than to refute it.

The contention made by counsel appointed for defendant by this court—that the word "offer" in section 11501 means "attempt" as defined by the law of crimes—is in effect a more sophisticated version of the argument advanced by defendant in pro. per. before the District Court of Appeal, Second District, Division Three. That court, speaking through Presiding Justice Shinn (*People v. Brown* (1960, Cal.App.), 3 Cal.Rptr. 203, 204, 205), stated defendant's contention as made in pro. per. as follows: "that the word 'offer' should be construed to mean 'bring, bear, or carry,' and since it was not even shown there was a narcotic in existence which could have been the subject of an offer, commission of the

---

[1]By a 1909 amendment of section 8 of the 1907 Poison Act the Legislature for the first time made it unlawful to "offer to sell, furnish or give away" narcotics except under certain conditions. (Stats. 1909, ch. 279, § 4.) Since then each of the series of acts which have denounced narcotics offenses has contained a provision similar to that of such amended section 8 or the comparable provision of the here pertinent section 11501 of the Health and Safety Code.

charged offense was not proved." Without in so many words rejecting defendant's contention as to the meaning of "offer," the District Court of Appeal correctly held that "Appellant's [defendant's] statement that he had 'it' was sufficient as proof that the heroin was in his possession and that he had the ability to perform his promise."

Now this court, after lengthy consideration of this simple case, comes to the same conclusion as to the sufficiency of the evidence—the only possible conclusion under any normal theory of appellate review. The only contribution to the law in the opinion by the court is the decision that the Legislature, when it proscribed both "offers" and "attempts," referred to two different sorts of criminal conduct.

In the circumstances it is obvious that the District Court of Appeal properly determined, on the basis of its own examination of the record, that "representation by counsel would be of no benefit to the appellant or to the court" and correctly held that "There is no merit in the appeal." (*People* v. *Brown* (1960, Cal.App.), *supra*, 3 Cal.Rptr. 203, 204.)

It seems proper to note that the majority "By the Court" opinion states (*ante*, p. 65) that "Defendant requested the District Court of Appeal, Second District, Division Three, in which the appeal was pending, to appoint an attorney to represent him, claiming that he was without funds to employ counsel. The court made an independent investigation of the record, determined that representation by counsel would be of no benefit to defendant or to the court, and denied the request. (See *People* v. *Hyde,* 51 Cal.2d 152, 154 [331 P.2d 42].) . . . We granted defendant's petition for hearing in this court and appointed counsel to represent him."

It appears proper to note also that the concurring opinion of Mr. Justice Traynor states (*ante*, pp. 69-70), "I concur in the judgment. It is my opinion, however, that the holding in *People* v. *Hyde,* 51 Cal.2d 152, 154 [331 P.2d 42], should be expanded to require the appointment of counsel on appeal for all indigent defendants convicted of felonies.

"The question calls for resolution even though we appointed counsel to represent defendant in this court. The question cannot remain in abeyance. This very case illustrates the recurring practice of the District Court of Appeal, Second District, Division Three, of referring the question of the appointment of counsel to the local bar association committee (see *People* v. *Logan,* 137 Cal.App.2d 331, 332 [290 P.2d 11]) and the consequent countervailing practice of this court to

then grant a hearing, even on its own motion, whenever there has been no appointment of counsel. There would be no end to such wasteful procedure were the question deemed moot each time this court granted a hearing and appointed counsel. The question should be settled in the interest of effective appellate court administration.''

It seems appropriate further to note that the question *was settled* by the holding in *People* v. *Hyde* (1958), 51 Cal.2d 152, 154 [1] [331 P.2d 42], and that the District Court of Appeal in the present case complied with that holding.

From what has been quoted above from the opinions of the majority and of Justice Traynor it appears proper to infer that the granting of a hearing in the case at bench was influenced at least in part by the view of the specially concurring justice. If such inference is properly drawn it seems obviously appropriate to observe that although counsel appointed by this court performed his duties faithfully and ably, the appointment of an attorney for the defendant has not aided such defendant or furthered the proper administration of justice. The only thing which the granting of a hearing accomplished has been a delay in final determination of this case and additional expense to the state.

McComb, J., concurred.