BARNS, Justice (Ret.)
(concurring specially) :
This proceeding is a collateral attack on a final judgment of guilt and sentence for murder in the first degree. Petitioner was represented at trial by two attorneys and no appeal was taken. The jury trial and adjudication was in 1951.
The petitioner seeks discharge on writ of habeas corpus directed to the respondent. *805 In response to a rule nisi, the respondent filed a return.[1] I would discharge the writ for the reasons hereafter stated.
One ground advanced by petitioner for relief is that a confession was introduced into evidence at trial, which confession was secured at a time when he did not have counsel and had requested counsel, contrary to the holding in Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) and, secondly, that he was not provided with counsel for purposes of appeal after conviction, contrary to the holding in Douglas v. People of State of California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811.
The petition states: Petitioner, after being apprehended in Michigan, and after being indicted for murder, was returned to Duval County, Florida, and tried for murder in the first degree, resulting in conviction with a recommendation of mercy by the jury. After denial of the motion for new trial, he was sentenced to imprisonment for life in November, 1951. At trial, the petitioner was represented by Mabry Carlton and Sam B. Wilson as his attorneys, “who informed petitioner that they had done all that they could do in the case” and refused to take an appeal at petitioner’s request. Petitioner advised the trial judge of need for an attorney to take an appeal. However, no attorney was appointed by the court, and no appeal was taken; and, at the time of his arrest in Michigan, he was sixteen years old and seventeen at time of trial. His petition states he repeatedly requested opportunity to secure an attorney which was refused.
The petition further states that “on or about September 27, 1951, petitioner was returned by train to Jacksonville, Florida, from the State of Michigan to face the charge of murder in the first degree. Upon arrival, petitioner was hustled into a police car and driven to the Duval County Sheriff’s Office and interrogated for some length of time. Petitioner again requested the assistance of counsel during this interrogation and stated definitely and emphatically that he would not make any more statements of any kind until he could consult with counsel. So the police authorities there began going into detail of what would happen to him if he did not co-operate; i. e., that he would ‘fry’ in the electric chair, and that they, the police, had ways of making people co-operate. Petitioner’s numerous requests for counsel were repeatedly denied and he was told by Capt. L. S. Ed-dins, Police Official, that a lawyer was unnecessary before the trial. Petitioner was told that if he would co-operate with them (the police) that they would give him a break and turn him over to the juvenile authorities, but warned that they would ‘fry’ him if he didn’t cooperate.”
“Petitioner was mortally afraid of the police and in a state' of shock, fear, exhaustion and he signed a ‘confession’ or statement that he fired the pistol that killed John E. Stephenson on the night of August 26, 1951.”
The petition further states that he was never advised that he had a right to remain silent; that he had a right to attorney or that anything he might say might be used against him at trial; and that “at trial the ‘confession’ petitioner had made at a time when he had been denied his fundamental right to counsel [were] sic admitted into evidence over the objections of defense counsel — that he then had, and [were] sic a material factor in petitioner’s conviction.”
Petitioner states that under Criminal Rule No. 1 he filed a post-conviction motion to vacate and set aside the judgment and sentence in the trial court, which was denied by the trial court and Per Curiam “affirmed” on appeal. [6-15-65]
Petitioner cites Escobedo v. State of Illinois, supra, in support of his collateral *806 attack on his conviction. Escobedo held that under the circumstances of that case, where a police investigation is no longer a general inquiry into an unsolved crime, hut has begun to focus on a particular suspect in police custody who has been refused an opportunity to counsel with his attorney and who has not been warned of his constitutional right to keep silent, the accused has been denied the assistance of counsel in violation of the Sixth and Fourteenth Amendments, and no statement obtained by the police during the interrogation may be used against him at trial.
It is our conclusion that the new rule of law announced by Escobedo is not to be applied retrospectively to permit a collateral attack by habeas corpus on conviction which antedated its announcement. This- conclusion was reached in United States ex rel. Walden v. Pate, 350 F.2d 240 (7 Cir., 1965), which holding and reasoning (which we adopt) was:
“The petition alleges that Walden was denied access to counsel following his arrest and before his confession to the crime of rape, which was introduced in the 1952 rape trial. A jury convicted him and he was sentenced to seventy-five years’ imprisonment. We think that the decision of the Supreme Court in Linkletter v. Walker, [381 U.S. 618] 85 S.Ct. 1731 [14 L.Ed.2d 601] (June 7, 1965), holding the exclusionary rule of Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed. 2d 1081 (1961), regarding evidence obtained by illegal searches and seizures, to be prospective only, requires a similar result with respect to the rule of Esco-bedo.
“ * * *
“Nothing expressed in either the Mapp or Escobedo opinion required retrospective application of the rule announced. The purpose of the Mapp and Escobedo rules is the deterrence of abuses by law enforcement officers. Experience had shown that the only effective means of enforcing compliance with the Fourth Amendment’s prohibition against illegal searches and seizures was to render all evidence thus obtained inadmissible, and in Mapp the Supreme Court took that step. Escobedo was likewise the culmination of long experience with cases involving defendants who had been held and gave confessions without assistance of counsel. The administration of justice suffered from the difficulties for the trier of fact and for courts of review of determining from the conflicting testimony of the interested parties whether a confession was or was not voluntary; and a condition existed where ignorance of constitutional rights and absence of counsel operated to the prejudice of persons in custody. In order to put an end to a system so fraught with potential abuses, the Supreme Court in Escobedo decided to remove the incentive to deny an accused the right to counsel by rendering inadmissible any confession obtained while such denial was in effect. It is because of the similarity of purposes that we, as the Supreme Court did with the Mapp rule in Linkletter v. Walker, hold that the rule of Escobedo does not apply retrospectively.”
The statements in the petition for the writ relate to the want of voluntariness of the confession introduced at trial and the want of the benefit of advice of counsel at the time of making it, and the admission of the confession into evidence at trial over the objection of his attorneys. The practice and law of this State on the admission into evidence of extra-judicial confessions seems to meet the federal standard as established in Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed. 908 (1964). Petitioner states the admission of the confession into evidence was objected to and we presume the applicable law was followed by the trial judge making an independent determination of the voluntariness of the confession in the absence of the jury and then ruled it admissible on a finding that it was voluntary; and the jury then instructed that it should be disregarded unless it finds that it was *807 voluntary. Habeas corpus is not a substitute for appeal.
Indigents Right to Counsel for Appeal. Douglas v. People of State of California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811, was a review on direct attack by certiorari on a judgment of conviction of thirteen felonies. Douglas had petitioned for assistance of counsel on his appeal previously taken, which assistance was denied even though indigency clearly appeared. Held: Where in accordance with state procedure the state appellate court made an ex parte examination of the record and determined that appointment of counsel for petitioner on his appeal would not be “of advantage to the defendant or helpful to the appellate court” and denied his petition, was a discrimination between the rich and the poor in violation of the Fourteeth Amendment.
We are not involved with the' petitioner’s right to an appeal. The statutory law in 1951 gave him that right and the constitution likewise now so provides it “as a matter of right.” State ex rel. Callahan v. Michell, Fla., 170 So.2d 290; Crownover v. Shannon, Fla., 170 So.2d 299. However, the right to appeal does not comprehend the right to have the state procure counsel to represent an indigent person for that purpose as a matter of course. The right of an indigent defendant to the assistance of counsel in a criminal prosecution is basic and fundamental. The accused enjoys the presumption of innocence and a fair trial requires the assistance of counsel unless waived. Gideon v. Wainwright, 1963, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799. However, the prosecution of an appeal by a convicted defendant is on a different footing. The defendant no longer enjoys the advantage of the presumption of his innocence on appeal and the state on appeal has the advantage of the presumption that the trial was regular and without harmful error as to the defendant. As stated in McIntosh v. Commonwealth, Ky.1963, 368 S.W.2d 331, 336:
“The right of counsel on appeal stands on a different footing, not only constitutionally but as a practical matter, from the right to counsel during earlier stages of a criminal proceeding. An appeal is not a prerequisite to the execution of a sentence, whereas the proceedings leading up to and including a judgment are. The right to a fair trial is primary and fundamental. A right of review is secondary, and exists only as an added safeguard against denial of the primary right. The obligation of the state to see that the defendant receives a fair trial is absolute; to provide him an appellate review is optional. That due process compels the court affirmatively to advise a defendant of his right to counsel at the trial stage does not lead to a conclusion that he must also be thus advised at the appellate stage. ‘Equal protection’ gives to the indigent defendant a right to counsel and to a transcript of the record on appeal if he requests it. In the absence of such a request it does not, in our opinion, oblige the court either to initiate an inquiry or to extend an invitation to appeal.”
The facts in the McIntosh case are quite different from those presented by petitioner. The Kentucky Court noted:
“ * * * [There was] no reason to believe from this record that [trial counsel] would not have prosecuted [the defendant’s] appeal had he requested them to do so. At no time did he suggest to the trial court, which had provided their services to him, that they had withdrawn. * * * It was not incumbent on the trial court to wait on him at the county jail lest some need arise that might not otherwise be called to its attention. * * * His testimony * * * contains no suggestion that during the time he remained in the jail at Richmond he made any attempt to send word to the trial judge apprising him of a need for counsel.”
Morales v. Cox, 1965, N.Mex., 406 P.2d 177, is a statement of facts similar, to a degree, to this case. There the convicted de *808 fendant advised his court-appointed counsel that he wanted an appeal from his conviction of second degree murder and also advised the court. The court advised that he talk to his lawyers. No appeal was taken and the opinion states:
“A review of the applicable decisions makes it clear that an indigent’s right to appellate counsel is not absolute in the sense of the right to trial counsel. Pate v. Holman, 341 F.2d 764 (5th Cir. 1965), on rehearing 343 F.2d 546; Norvell v. State of Illinois, 373 U.S. 420, 83 S.Ct. 1366, 10 L.Ed.2d 456; and Douglas v. People of State of California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811. And, in state courts, the trial judge is not required to advise one convicted of a crime of his right to appeal. See Boskey, The Right To Counsel In Appellate Proceedings, 45 Minn.L.Rev. 783, 789 (1961).
sfc #
"New Mexico imposes no statutory duties upon its court-appointed counsel respecting post-conviction relief by appellate review of the conviction. Certainly, no greater duties are imposed in this State upon court-appointed counsel in that respect than upon employed counsel in that respect than upon employed counsel. We think the State may rely on the presumption that an accused’s lawyer, whether employed or court appointed, will protect the rights of such person to an appeal. But that presumption is rebuttable. See Pate v. Holman, supra. Here, the petitioner has failed to rebut such presumption.
“While indigent defendants convicted of crime are clearly entitled to have counsel appointed to represent them for a review of the conviction and to an appeal, John B. Walker testified in this case that in his opinion no reversible error occurred in the Morales trial and that no meritorious basis for appeal was present. Under such circumstances, the Colorado Supreme Court in Stanmore v. People, Colo. 1965, 401 P.2d 829, said:
“ ‘ * * * It is our firm conviction that while indigent defendants convicted of a crime are certainly entitled to have counsel appointed at State expense to represent them on review, Douglas v. [People of State of] California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811, they are not entitled to require the State to search for counsel until one is found who will contend that there was error in the trial.
“ 'This is in contrast to the rule which demands that everyone be afforded counsel at his trial. At the trial, the issue of guilt or innocence, and the determination of that issue must, by constitutional right, be by a jury. On review, however, the issue is not guilt or innocence, but whether errors of law have been committed which warrant reversal of the conviction. When an able lawyer appointed by the State, after conscientious and diligent investigation, determines that no grounds of error exist, the defendant may, of course, continue to prosecute his writ of error, but not, in our view, with counsel paid for by the State. See Ellis v. United States, 356 U.S. 674, 78 S.Ct. 974, 2 L.Ed.2d 1060; Hardy v. United States, 375 U.S. 277, 84 S.Ct. 424, 11 L.Ed.2d 331. * * *’”
Due process does not require an appeal or that an indigent convicted of crime shall have as of course the services of an attorney provided by the state for appellate purposes. Such a requirement would be the cause of many frivolous appeals which would cause congestion and retard the speedy administration of justice. No attorney is required in the discharge of his duty to a client to take a frivolous appeal or one which he justly believes without merit. However, if having represented one as counsel at trial in a criminal case, he believes harmful and prejudicial error to have occurred by reason of which he believes a reversal on appeal is likely or probable, he should so advise his client and prosecute an appeal unless the de *809 fendant wishes otherwise; and, of course, when success on appeal would likely result in a new trial which, in turn, might result in a more severe penalty, the appeal should only he taken with consent and approval of the accused after he has been fully advised. In this case, had an appeal been taken and a new trial granted, it could have resulted in the death penalty. Furthermore, when his views are to the contrary, he should likewise advise his client. Neither public defenders nor attorneys appointed by the court to represent indigent defendants are required or expected to prosecute frivolous appeals.
The attorney representing the defendant at trial is better and more fully informed of any plausible grounds for reversal on appeal and in the absence of a showing to the contrary, it is presumed that his attorney would protect his interest by an appeal if the attorney was of the opinion that an appeal would or might reasonably be expected to result in the reversal or modification of the judgment of conviction, unless the defendant, after being so informed, disapproved.
The foregoing observations seem to be applicable to any attorney representing a defendant at trial in a criminal case, but it is particularly applicable to public defenders and attorneys appointed by the court to represent an indigent defendant. If a public defender or an attorney appointed by the court to represent an indigent defendant is of the opinion that an appeal would not reasonably be expected to result in a reversal or modification of the judgment of conviction, he should so advise the defendant and make application to the court for a discharge, stating in the application the grounds for discharge. Meritorious appeals-should be advanced, but frivolous appeals' are neither justified nor expected. See concurring opinion of Justice Traynor, People v. Brown, (1960), 55 Cal.2d 64, 9 Cal.Rptr. 816, 357 P.2d 1072; Pate v. Holman, 341 F.2d 764 (5 Cir., 1965). An attorney who has been discharged under the foregoing circumstances need not proceed with it.
In conformity with good practice and prompted by Douglas v. People of State of California, supra, it is important that an attorney, representing a convicted indigent in a criminal case, either prosecute an appeal or make application to the court for a discharge, being governed by facts and circumstances of the case and the ethics of the profession.
When the attorney seeks a discharge, stating that in his opinion that there are no substantial grounds for a meritorious appeal, he should so advise the court and the indigent with all reasonable promptness after coming to such conclusion so that the indigent’s constitutional right to appeal will not be jeopardized. If counsel has, at the time of sentence, reached such conclusion, he might very well at that time seek such discharge in open court when the defendant is present and the factual matters are fresh in mind of counsel and the judge.[2] { i'
In Carr v. State, Fla.App.1965, 180 So.2d 381, after the record on appeal was perfected, the public defender, appointed by the court by reason of appellant’s indigency, very properly moved to be discharged as appellant’s representative because of his conclusion that the appeal was frivolous and without merit. The court granted his *810 motion and quashed the appeal after stating:
“A lawyer assigned as counsel for an indigent ought not to seek to he 'excused for any trivial reason and he should always exert his best efforts in his client’s behalf regardless of his personal opinion as to the guilt of the accused. The lawyer is bound by all fair and honorable means to present every defense that the law of the land permits to the end that no person may be deprived of life or liberty but by due process of law. A lawyer is bound to give his client a candid opinion of the merits and probable result of pending or contemplated litigation. His duty does not include, and his Code of Ethics prohibits, his setting up false claims to enable him to win his client’s cause. It is unprofessional and dishonorable to deal other than candidly with the facts in the presentation of a cause. Every lawyer must upon his own responsibility decide what causes he will bring to court and he cannot escape it by urging as an excuse that he is only following his client’s instructions. The right of an attorney to withdraw from employment, once assumed, arises only from good cause. When a lawyer discovers that his client has no cause and the client is determined to continue it, the lawyer may be warranted in withdrawing on due notice to the client. Rule B, Ethics Governing Attorneys, Section (I), Florida Rules of Court 1965, 31 F.S.A.”
The foregoing principles of ethics are as applicable to the taking of an appeal as they are to the commencement of an action.
The petitioner not being entitled to release from custody, he should be remanded and the writ should be discharged.

. The respondent has made no showing that the judgment in the proceedings under Criminal Rule 1, affirmed on appeal, was upon an evidentiary Rearing and was therefore res judicata of the issues raised in these proceedings.

. Tate v. United States, 123 U.S.App.D.C. 261, 350 F.2d 245 (1066) quotes from Ellis v. United States, 356 U.S. 674, 78 S.Ct. 974, 2 L.Ed.2d 1060 (1958) as follows :
“If counsel if convinced, after conscientious investigation, that the appeal is frivolous, of course he may ask to withdraw on that account. If the court is satisfied that counsel has diligently investigated the possible grounds of appeal, and agrees with counsel’s evaluation of the ease, then leave to withdraw may be allowed and leave to appeal may be denied.”
and then states:
“* * * [N]o appointed counsel is pex-mitted to withdraw from an appeal unless he has satisfied the court that after thorough investigation of the facts of the ease and research of all legal issues involved he has discovered no non-frivolous issue on which an appeal might be argued.”